**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4366**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CORTEZ LAMAR ROGERS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina at Statesville. Frank D. Whitney, Chief District Judge. (5:13-cr-00089-FDW-DCK-1)

Submitted: March 26, 2020                    Decided: June 2, 2020

Before MOTZ, HARRIS, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Quattlebaum joined.

Anthony Martinez, Federal Public Defender, Melissa S. Baldwin, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

While serving the supervised-release portion of a federal sentence, Cortez Lamar Rogers eluded arrest for a drug offense by leading police officers on a high-speed car chase. After a hearing, the district court revoked Rogers's supervised release and imposed a revocation sentence that included 12 months of supervised release. Only later, when the written judgment issued, did the district court identify 26 conditions on Rogers's new term of supervised release.

On appeal, Rogers argues that a subset of those conditions – the 22 that were not mandated by statute, but instead imposed at the discretion of the court – are inconsistent with his oral sentence and therefore void. We agree. The district court was required to impose any discretionary conditions of supervised release orally, at Rogers's sentencing, but failed to do so. Accordingly, we vacate Rogers's sentence and remand for resentencing.

## I.

The events that give rise to this appeal began several years ago, when Rogers pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a term of imprisonment followed by three years of supervised release. As a condition of that supervised release, Rogers was prohibited from committing another federal, state, or local crime.

Rogers violated that condition in 2017, approximately a month after his supervised release began, when deputies of the Catawba County Sheriff's Office in North Carolina attempted a controlled buy of heroin. Attempting to evade arrest, Rogers fled the scene

2

and led police on a dramatic high-speed car chase, which ended only when "spike strips" were used to blow out the tires on Rogers's car. Rogers was charged with offenses including fleeing and eluding arrest – for which he later was convicted and sentenced in state court – and a federal probation officer petitioned the district court to revoke Rogers's supervised release.

The district court held a supervised-release revocation hearing to consider that petition. At the hearing, Rogers admitted to violating the condition of his supervised release that prohibited him from committing a new criminal offense, and he and the government jointly recommended a revocation sentence of 24 months' imprisonment. The government also asked that another term of supervised release follow Rogers's imprisonment. Rogers objected on the ground that supervised release would be duplicative of supervision imposed as part of his state sentence.

After hearing the parties' arguments, the district court pronounced its sentence. With respect to imprisonment, it noted Rogers's criminal history, his involvement in an "undercover drug deal gone bad," and the dangerous nature of the car chase, and concluded that the 24-month sentence recommended by the parties was "very reasonable." J.A. 33. Then, turning to supervised release, the court concluded that "additional supervision [was] appropriate," in part because of Rogers's "serious criminal history" and in part because only federal, as opposed to state, supervision would give the court continued jurisdiction over Rogers. J.A. 34.

The district court then summarized the sentence it was contemplating: "Termination of supervision; commitment to custodial authorities for a term of 24 months; and then an

3

additional term of supervision of 12 months." J.A. 34–35. After checking to see whether Rogers would require drug or mental-health treatment – which both Rogers and the government deemed unnecessary – the court officially pronounced its sentence: "[T]he sentence as proposed is hereby ordered imposed." J.A. 39. At no point did the court specify or refer to any conditions that would apply to Rogers's new term of supervised release.

Weeks later, and after Rogers had filed a motion asking it to reconsider its decision to impose supervised release, the district court entered a written judgment memorializing its sentence. In addition to specifying the length of Rogers's terms of imprisonment and supervised release, the written judgment lists 26 conditions on Rogers's supervised release. Four are labeled "mandatory conditions," J.A. 51, and are required by the supervised-release statute, 18 U.S.C. § 3583(d): that Rogers not commit new crimes, not possess controlled substances, cooperate in DNA collection, and submit to drug testing. *See* 18 U.S.C. § 3583(d) (enumerating conditions that "[t]he court shall order"). The remaining 22 conditions are non-mandatory and may be imposed at the district court's discretion. *See id.* (the court "may order . . . any other condition it considers to be appropriate" after consideration of certain factors). The judgment identifies these 22 discretionary conditions as "standard conditions . . . adopted by this court," J.A. 51, apparently in reference to a Western District of North Carolina standing order that governs supervised release and lists the same 22 conditions. *See* Standard Conditions of Probation and Supervised Release, No. 3:16-mc-00221 (W.D.N.C. Dec. 8, 2016) ("Standing Order").

4

After the district court denied his motion to reconsider, Rogers noted this timely appeal, challenging the 22 "standard conditions" listed in the written judgment as inconsistent with the oral sentence pronounced at his sentencing hearing.

## II.

This is an unusual sentencing appeal. Rogers's argument is not that his supervised-release sentence is procedurally or substantively unreasonable. Instead, he makes a more elementary contention: that the written judgment's 22 "standard" conditions are not part of his sentence because the district court did not pronounce them orally at his sentencing hearing. Given the conflict between his oral sentence and the written judgment, Rogers argues, the oral sentence prevails, rendering the challenged conditions nullities and necessitating a remand for resentencing.

The government argues that we may review this claim for plain error only, as Rogers did not object to the challenged conditions before the district court. We disagree. The plain-error standard applies only if a defendant has an opportunity to object in the trial court. *See* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice the party."). Here, nothing occurred at sentencing that would have alerted Rogers to the possibility that his written judgment might include unmentioned conditions of supervised release. Instead, Rogers's claim – that the written judgment is inconsistent with his oral sentence – arose, almost by definition, only after his sentencing hearing and after the judgment was entered and final. In such cases, we – like other courts of appeals – allow a defendant to appeal

5

the allegedly inconsistent judgment without an objection in the district court. *See, e.g.*, *United States v. Miller*, 341 F. App'x 931, 932 (4th Cir. 2009) (applying plain-error review only "[t]o the extent the contested . . . condition[s] w[ere] imposed" at sentencing); *United States v. Sepulveda-Contreras*, 466 F.3d 166, 171 (1st Cir. 2006) (declining to apply plain-error review to an inconsistent-judgment claim).

Accordingly, we review the consistency of Rogers's oral sentence and the written judgment de novo, "comparing the sentencing transcript with the written judgment to determine whether an error occurred as a matter of law." *United States v. Johnson*, 765 F.3d 702, 710 (7th Cir. 2014).

## A.

We begin with the threshold question of whether the district court was required to orally pronounce the 22 "standard" but discretionary conditions of Rogers's supervised release at sentencing. In accord with the Fifth and Seventh Circuits, we conclude that it was, and that all non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing. *See United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019); *United States v. Diggles*, No. 18-41521, __ F.3d __, 2020 WL 2048025, at *5 (5th Cir. Apr. 29, 2020) (en banc).

This conclusion flows naturally from a fundamental precept: A defendant has the right to be present when he is sentenced. *See* Fed. R. Crim. P. 43(a)(3) ("[T]he defendant must be present at . . . sentencing."). In order to protect that right, we require a district court to orally pronounce a defendant's sentence in the defendant's physical presence. *See United States v. Lawrence*, 248 F.3d 300, 303–04 (4th Cir. 2001). And because a defendant

6

is "present at the announcement of the sentence, but not when the judgment is later entered," *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003), it follows that if a conflict arises between the orally pronounced sentence and the written judgment, then the oral sentence controls. *See Diggles*, 2020 WL 2048025, at *2; *see also id.* at *3 ("Including a sentence in the written judgment that the judge never mentioned when the defendant was in the courtroom is tantamount to sentencing the defendant *in absentia*." (internal quotation omitted)). The primacy of the oral sentence over the written judgment is well established, in our circuit and others, and no party to this case disputes it. *See*, *e.g.*, *United States v. Morse*, 344 F.2d 27, 29 n.1 (4th Cir. 1965) ("To the extent of any conflict between [a] written order and [an] oral sentence, the latter is controlling."); *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003) (same); *United States v. Doswell*, 670 F.3d 526, 531 n.3 (4th Cir. 2012) (same).

What is at issue in this case is how that foundational rule applies to supervised-release conditions. More specifically, we must decide whether and under what circumstances a condition that was not pronounced orally at sentencing may be included in a later-filed written judgment without creating a conflict that will nullify the condition. *See Johnson*, 765 F.3d at 711 (a written condition inconsistent with an oral pronouncement is a "nullity" that must be vacated).

When it comes to mandatory conditions – that is, the conditions "specifically listed in [18 U.S.C.] § 3583(d) that a sentencing court 'shall' impose with no room for discretion," *United States v. Cabello*, 916 F.3d 543, 545 (5th Cir. 2019) (Elrod, J., concurring) – the circuit courts and the parties are in agreement: A district court need not

orally pronounce mandatory conditions at sentencing, and their appearance in a subsequent judgment will not create a conflict. *See Anstice*, 930 F.3d at 909 (citing uniform circuit authority). That is so because § 3583(d)'s mandatory conditions are, necessarily, part of any term of supervised release pronounced at sentencing; the district court has no discretion to omit them. *Id.* It follows that the defendant has notice, via statute, that he will be subject to those conditions as a matter of law. *Id.* And oral pronouncement of mandatory conditions at a sentencing hearing would not provide the customary "opportunity to defend" against a contemplated sentence or condition: "When a condition is mandatory, there is little a defendant can do to defend against it." *Diggles*, 2020 WL 2048025, at *4.

For those reasons, we join in the consensus view that a "district court's failure to announce conditions of supervised release made mandatory by statute" does not "render[] those conditions nullities." *Anstice*, 930 F.3d at 909. To be sure, it is "sound and prudent" for a district court to "orally pronounce all conditions of supervised release, even those mandated by statute"; like the Seventh Circuit, "we do not intend to displace this practice." *Id.* at 910. But as Rogers acknowledges, the mandatory conditions of his supervised release are valid components of his sentence, even though they were not orally announced at his sentencing.

Discretionary conditions are different. Section 3583(d) divides supervised-release conditions into two and only two categories: mandatory conditions, discussed above, which must be imposed in every case; and discretionary conditions, which "include everything else." *Cabello*, 916 F.3d at 546 (Elrod, J., concurring). Conditions in this latter category may be imposed only if a court finds that they: "reasonably relate[]" to certain of

8

the standard § 3553(a) sentencing factors, including the background circumstances of the offense and the defendant, and the need for deterrence and public protection; involve "no greater deprivation of liberty than is reasonably necessary"; and are consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3583(d). The Sentencing Guidelines further subcategorize discretionary conditions, listing "standard" conditions that are "recommended" for all terms of supervised release, "special" conditions that are "recommended" only in certain circumstances, and "additional" conditions that "may be appropriate on a case-by-case basis." U.S.S.G. § 5D1.3.

The full typology can be complicated. But for present purposes, what matters is that 22 of the conditions listed in Rogers's final judgment – the 22 that he challenges in this appeal – are of the "discretionary" and not the "mandatory" variety: They could not be imposed, consistent with § 3583(d), without an exercise of the district court's discretion, based on its "individualized assessment of the defendant and the [statutory] factors." *United States v. Wroblewski*, 781 F. App'x 158, 162 (4th Cir. 2019); *see also United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020) (district court must explain imposition of special conditions so that appellate court may determine "whether they are reasonably related" to the statutory factors (internal quotation omitted)).

It is for that reason that we conclude, following the Fifth and Seventh Circuits, that the district court was required to orally pronounce the discretionary conditions on Rogers's supervised release. *See Anstice*, 930 F.3d at 909–10; *Diggles*, 2020 WL 2048025, at *3–4. We may – indeed must – assume that every oral sentence of supervised release imposes the conditions mandated by statute. But the same is not true of discretionary conditions:

9

A district court may impose those conditions only after an individualized assessment indicates that they are justified in light of the statutory factors. We therefore cannot assume that any set of discretionary conditions – even those categorized as "standard" by the Guidelines – will be applied to every defendant placed on supervised release, regardless of conduct or circumstances. "As commonplace and sensible as these . . . conditions may be across federal sentences, Congress has not mandated their imposition. If a district court does choose to impose them, they must be announced at sentencing." *Anstice*, 930 F.3d at 910.

There are other salutary reasons for requiring discretionary conditions to be orally pronounced at sentencing. Chief among them is to preserve defendants' ability to avoid the imposition of unwarranted conditions. Just as with other discretionary aspects of a criminal sentence, a defendant may contest whether a discretionary condition is appropriate under all the relevant circumstances. As we note above, foregoing the oral pronouncement of mandatory conditions – which will be imposed regardless of circumstances – does not deprive the defendant of any meaningful opportunity to object. But foregoing oral pronouncement of discretionary conditions will leave defendants without their best chance to oppose supervised-release conditions that may cause them unique harms and thus directly implicate their right to be present at sentencing. *Cf. Diggles*, 2020 WL 2048025, at *4 ("If a condition is required, making an objection futile, the court need not pronounce it. If a condition is discretionary, the court must pronounce it to allow for an objection.").

Finally, the requirement that discretionary conditions be orally pronounced at sentencing brings the pronouncement rule into line with the requirement that discretionary

10

conditions be adequately explained. *See McMiller*, 954 F.3d at 676; *Wroblewski*, 781 F. App'x at 162. The duty to explain arises from the same statutory source as the duty to pronounce: Only with an explanation for why a condition was imposed can a reviewing court determine whether that condition is "reasonably related" to the factors that permit a discretionary condition to be imposed under § 3583(d). *See McMiller*, 954 F.3d at 676. And if the imposition of a discretionary condition must be explained, then, logically, it also must be pronounced as part of the defendant's oral sentence, so that the sentencing transcript will indicate objectively which conditions were imposed and why. *See Diggles*, 2020 WL 2048025, at *4 (pronouncement requirement should "mirror" the requirement for explanation).[1]

We recognize that two other circuits have taken different approaches, allowing district courts to include in written judgments various subsets of discretionary conditions that were not pronounced orally at sentencing. In the Ninth Circuit, discretionary conditions listed as "standard" in the Guidelines need not be orally pronounced, though those listed as "special" must be. *See United States v. Napier*, 463 F.3d 1040, 1042–43 (2006). And in the Second Circuit, discretionary conditions need not be announced, provided that they: are "standard" Guidelines conditions; are "special" Guidelines conditions applicable in the circumstances of the case; or fall into a partly but not entirely

---

[1] That is not to say, of course, that because all discretionary conditions must be pronounced, all will require the same amount of explanation. On the contrary, "the amount of explanation required to permit meaningful appellate review of supervised-release conditions undoubtedly will vary with the nature of the condition imposed." *McMiller*, 954 F.3d at 677.

11

overlapping category of conditions that qualify as "basic administrative requirements" of supervised release. *Handakas*, 329 F.3d at 117; *see also United States v. Thomas*, 299 F.3d 150, 155 (2d. Cir. 2002).

Like the Fifth Circuit, we think these sometimes "byzantine distinctions" miss the point: Either conditions are mandated by statute, or they are not. *Diggles*, 2020 WL 2048025, at \*4. And if they are not – if they instead are discretionary and authorized only after individualized assessment and consideration of § 3583(d)'s factors – then we cannot deem them "implicit" in every oral sentence imposing a term of supervised release, no matter the particular circumstances, *cf. Napier*, 463 F.3d at 1043, or assume that they merely "clarify" the meaning of such sentences, *cf. Thomas*, 299 F.3d at 155. Some of those conditions may be "recommended" as "standard" by the Guidelines. *See* U.S.S.G. § 5D1.3. But the Guidelines do not purport to make even "standard" conditions mandatory, and of course they could not: "[T]he fact that the Guidelines have labelled certain conditions as standard conditions does not change the fact that Congress has classified those conditions as discretionary conditions under § 3583(d)." *See Cabello*, 916 F.3d at 547 (Elrod, J., concurring). If we are to remain faithful to the statutory language, under which the imposition of *any* discretionary condition must be justified under the § 3583(d) factors, then we may not simply import discretionary conditions – no matter how sensible and routine – into oral sentences as a matter of course. *See id.* at 547–48.

## B.

Having concluded that the district court was required to orally pronounce the 22 discretionary conditions imposed on Rogers's supervised release, we turn now to the

question of whether the court can be said to have satisfied that requirement here. The government, focusing most of its argument on this point, takes the position that in light of the Standing Order referenced in the written judgment, we may understand the district court's oral pronouncement of "an additional term of supervision," J.A. 35, to incorporate all 22 discretionary conditions that appear in the Standing Order. We must disagree.

Importantly, Rogers does not dispute that a district court may satisfy its obligation to orally pronounce discretionary conditions through incorporation – by incorporating, for instance, all Guidelines "standard" conditions when it pronounces a supervised-release sentence, and then detailing those conditions in the written judgment. And indeed, both the Fifth and Seventh Circuits have held as much, finding that district courts may comply with the pronouncement requirement by expressly incorporating a written list of proposed conditions, such as the recommendations of the probation office set out in a defendant's pre-sentence report, *see Diggles*, 2020 WL 2048025, at *6, or, as directly relevant here, a court-wide standing order that lists certain conditions of supervised release, *see id.*; *Johnson*, 765 F.3d at 711. Again, the "better practice" will be to announce each discretionary condition "in open court with [the defendant] present." *Wroblewski*, 781 F. App'x at 164 n.1. But so long as the defendant is informed orally that a certain set of conditions will be imposed on his supervised release, the courts have reasoned, then a later-issued written judgment that details those conditions may be construed fairly as a "clarification" of an otherwise "vague" oral pronouncement. *Johnson*, 765 F.3d at 711. And that practice is consistent, we think, with our own court's understanding that where

13

the precise contours of an oral sentence are ambiguous, we may look to the written judgment to clarify the district court's intent. *Osborne*, 345 F.3d at 283 n.1.

So the problem here is not with the concept of pronouncement by incorporation. The problem is that in this case, the district court in fact did *not* incorporate the Standing Order into Rogers's oral sentence. What the district court announced was only that it was imposing "an additional term of supervision of 12 months." J.A. 35. It made no reference to any conditions or to the Standing Order. This may have been an aberration: The Standing Order itself expressly contemplates that it will be incorporated orally at sentencing, *see* Standing Order at 1 ("Any reference in a Judgement or pronouncement of sentence to the Standard Conditions of Supervised Release as adopted in the Western District of North Carolina . . . are hereby deemed to refer to and incorporate the following language . . . ."), and the defendant has pointed us to cases in which district courts do exactly that. *See, e.g.*, *McMiller*, No. 18-4744, Joint Appendix at 70; *United States v. Ferebee*, No. 18-4266, Joint Appendix at 142–43. But for whatever reason, that did not happen here. On this record, there is no ambiguity: We are left without any objective indication that at the time of sentencing – the time that counts, when the defendant is in the courtroom – the district court actually imposed any non-mandatory conditions on Rogers's supervised release.[2]

---

[2] The government points us to *United States v. Byrd*, No. 97-4993, 1998 WL 609723 (4th Cir. 1998), an unpublished decision in which we found that a "listing of conditions of probation in the written judgment" clarified rather than conflicted with an oral pronouncement that did not include conditions. But the condition at issue in *Byrd* was

14

The government urges us to overlook that omission on the ground that a district court's express reference to the conditions in a standing order would be a mere formality or "ritualistic incantation" that serves no real purpose. But as the Fifth Circuit has explained, the requirement that a district court expressly adopt a written list of proposed conditions is "not a meaningless formality": It is a critical "part of the defendant's right to be present at sentencing." *Diggles*, 2020 WL 2048025, at *6. Express incorporation also provides us, as a reviewing court, with the crucial objective indication that a district court has undertaken the necessary individualized assessment and made a considered determination, at the time of sentencing, that an identifiable set of discretionary conditions should be imposed on a defendant's supervised release. We have held already that the existence of a standing order does not relieve a district court of its duty to explain the imposition of discretionary conditions, even if those conditions are included in the standing order. *See McMiller*, 954 F.3d at 676. We can see no reason to apply a different rule to a district court's duty to orally pronounce any discretionary conditions included as part of a defendant's sentence.

Supervised-release conditions are an important part of sentencing. They aid in reintegrating offenders and in protecting the public from future crimes. They also restrict defendants' liberty and put defendants at risk of reincarceration, sometimes for conduct that is otherwise lawful. *See*, *e.g.*, J.A. 51 (written judgment listing conditions that restrict

---

mandatory, not discretionary, and so *Byrd*'s holding is fully consistent with the rule we adopt today.

15

Rogers from, *inter alia*, traveling or seeking an extension of credit); *McMiller*, 954 F.3d at 677 (discussing conditions restricting internet use). The requirement that discretionary conditions be pronounced in open court gives defendants a chance to object to conditions that are not tailored to their individual circumstances and ensures that they will be imposed only after consideration of the factors set out in § 3583(d). Because that requirement was not satisfied here, we vacate Rogers's sentence and remand to the district court for resentencing.[3]

## III.

For the reasons stated, we vacate Rogers's sentence and remand for proceedings consistent with this opinion.

*VACATED AND REMANDED*[*]

---

[3] Although we join with the Fifth and Seventh Circuits in requiring district courts to orally announce the imposition of any discretionary conditions of supervised release, we note that we would be required to vacate Rogers's sentence no matter what rule we adopted: Many of the discretionary conditions listed in Rogers's written judgment are recommended by the Guidelines only under circumstances not present in this case or are not recommended by the Guidelines at all. In other words, even under the most generous approach – that of the Second Circuit – those conditions were not "implicit" in the district court's imposition of a term of supervised release, and therefore would conflict with Rogers's oral sentence. *See Thomas*, 299 F.3d at 155.

[*] This opinion is published without oral argument pursuant to this Court's Standing Order 20-01, http://www.ca4.uscourts.gov/docs/pdfs/amendedstandingorder20-01.pdf (amended Apr. 7, 2020).