**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-4389**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

JAMES ARTHUR SCOTT,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, Senior District Judge. (4:23-cr-00079-RAJ-DEM-1)

———————

Submitted: July 28, 2025                    Decided: November 21, 2025

———————

Before QUATTLEBAUM and BENJAMIN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

———————

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

———————

**ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Salvatore M. Mancina, Assistant Federal Public Defender, Amanda C. Conner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Jessica D. Aber, United States Attorney, Jonathan S. Keim, Assistant United States Attorney, Devon E.A. Heath, Assistant United States Attorney, Daniel J. Honold, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,

Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Scott was convicted of possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of cocaine, *see* 21 U.S.C. § 841, and sentenced to 108 months' imprisonment. Scott appeals, challenging his conviction and sentence. We affirm his conviction but vacate his sentence and remand for a full resentencing.

I.

Special Agent Ashby Marshall worked in the drug enforcement division of the Virginia State Police, specializing in parcel interdiction. On August 10, 2023, Marshall was monitoring packages received at a parcel facility in Newport News and saw a package addressed to "Lit Wick" at 1718 North King Street in Hampton, Virginia. The package appeared suspicious to Marshall for several reasons, including the manner in which it was packed and the fact that "Lit Wick" did not match information about the occupants of 1718 North King Street. Marshall placed the package in line with several non-suspicious packages for scanning by a drug dog; the dog alerted when it passed the package addressed to "Lit Wick." Marshall then obtained a warrant authorizing a search of the package. The search revealed two shoeboxes, each containing a kilo of cocaine inside a block of melted wax.

The officers elected to rewrap the package and make a controlled delivery that same day to the North King Street address. Detective Robert Stewart began surveilling the address, which was one of several small buildings sharing a small parking lot. *See* J.A. 406-07. When Stewart arrived, Scott was already there, driving a Dodge Charger that he

3

had backed up to the tree line at the edge of the parking lot. Scott remained in the lot for more than an hour; during this time, he got out of the car to get a snack from the trunk but did not enter any of the buildings. An undercover officer posing as a UPS driver drove a van into the parking lot and got out of the van carrying the package. Scott then got out of his car and intercepted the officer before he reached the building. Scott accepted the package, placed it on the front passenger seat of his car, and then walked back to the driver's side. Uniformed law enforcement officers then entered the parking lot and arrested him.

Officers searched the car incident to Scott's arrest and found two semi-automatic pistols—one in the front-seat center console, placed grip-up and plainly visible when the console was opened; the other in the trunk, also plainly visible despite being partially covered by clothes. *See* J.A. 116-17. Both pistols were loaded and had a round in the chamber. A jacket with Scott's wallet (which contained $1000 in cash) was found in the front seat. A rental agreement found in the trunk showed that Scott had rented the car a few weeks before the arrest.

Police spoke to the UPS driver who had been making deliveries to the North King Street address for three years. The driver told police that he had delivered packages addressed to "Lit Wick" at that address several times and identified Scott from a photo array as the person who took delivery of those packages.[1]

---

[1] At trial, the UPS driver estimated that he had delivered "Lit Wick" packages to the North King Street address four times. *See* J.A. 129. At sentencing, the government (Continued)

4

Scott was charged with possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of cocaine, *see* 21 U.S.C. § 841, and with possession of a firearm in furtherance of a drug-trafficking offense, *see* 18 U.S.C. § 924(c). Scott proceeded to trial, where a jury found him guilty of the drug charge but not guilty of the firearm charge. The district court imposed a sentence of 108 months' imprisonment, to be followed by a four-year term of supervised release. This appeal followed.

## II.

Scott first contends that the evidence was insufficient to support his conviction. *See* Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").

"To prove possession with the intent to distribute controlled substances, the government must show: (1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute." *United States v. Williams*, 130 F.4th 177, 182 (4th Cir. 2025). To satisfy the knowledge element, the government must show that "the defendant knew he was dealing with a controlled substance." *McFadden v. United States*, 576 U.S. 186, 188–89 (2015) (cleaned up). Scott contends the government's

---

presented evidence that Scott had signed for nine packages addressed to "Lit Wick" at the North King Street address.

evidence failed to show that he knew the package contained a controlled substance and that the district court therefore erred by denying his motion for acquittal. We disagree.

"Sufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (cleaned up). When considering such a challenge, we must draw all reasonable inferences in favor of the government, and we must presume "that the jury resolved all evidentiary conflicts in the [g]overnment's favor." *United States v. Hunt*, 99 F.4th 161, 184 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 1890 (2025). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio*, 577 U.S. at 243 (cleaned up).

The circumstances surrounding the delivery of the "Lit Wick" packages are clearly enough to show that some sort of illegal activity was afoot in this case, as counsel for Scott essentially concedes. *See* Brief of Appellant at 19-20. Nonetheless, it is not enough for the government to show that the defendant knew he possessed some form of contraband; the knowledge element of § 841 requires evidence the defendant knew that what he possessed was a *controlled substance*. *See McFadden*, 576 U.S. at 195 (rejecting government's argument that the knowledge requirement in § 841(a)(1) "is met if the defendant knew he was dealing with an illegal or regulated substance under some law") (cleaned up); *United States v. Louis*, 861 F.3d 1330, 1333–34 (11th Cir. 2017) ("[T]o prove that Louis knowingly or intentionally possessed with intent to distribute a controlled substance under § 841 the government would have to prove that Louis knew the boxes contained a

6

controlled substance, and not just contraband illegal under *some* law.") (cleaned up). In our view, the government's evidence was sufficient to submit the § 841 charge to the jury.

Although many things can qualify as contraband depending on the circumstances—untaxed cigarettes or alcohol, stolen cars, etc.—there is a much smaller universe of contraband types that can be mailed in packages small enough to be picked up by a single person driving a not-particularly large sedan but yet still be valuable enough to justify a criminal operation. Scott waited in his car for more than an hour to pick up a package addressed to a fictitious person or company with no connection to the address where the package was sent, and he intercepted the driver as soon as he arrived with the package. This unusual behavior suggests a strong interest in ensuring that the package was not handed to anyone other than Scott, which a jury could conclude is an indication that Scott knew the package contained a controlled substance. After all, if a package full of untaxed cigarettes were opened by an unintended recipient, the unlawful nature of the cigarettes would not likely be immediately apparent; the unlawful nature of a package full of cocaine would be obvious.

In addition, Scott's car contained two loaded semi-automatic pistols in places that were accessible to Scott whether he was in the car or standing outside it. Given the trial testimony that those involved in the drug trade frequently carry guns to protect their drugs and themselves, the jury could rationally have found the presence and location of the guns

7

to be an indication of Scott's knowing involvement in the drug trade.[2] And because the word "lit" is often used to describe someone who is high or intoxicated,[3] the jury likewise could have found the fictitious name itself—Lit Wick—to be evidence of Scott's knowledge that the package contained controlled substances.

We recognize that these inferences and bits of evidence are not necessarily the most persuasive when viewed individually. Nonetheless, we believe that when considered together with the other evidence presented at trial, they are sufficient to support the district court's decision to deny Scott's Rule 29 motion and submit the § 841 charge to the jury.

## III.

We turn now to Scott's challenges to his sentence. He contends the district court erred when it calculated his Guidelines sentencing range, improperly relied on acquitted conduct, and imposed a substantively unreasonable sentence. Scott also contends that the

---

[2]      Scott contends that the jury's acquittal on the § 924(c) count shows that the jury rejected the theory that "Scott was engaged in the drug trade because dealers often carry guns to protect their product and money." Brief of Appellant at 20. The jury's verdict on the § 924(c) count is not a factor we consider in our review of the evidence supporting the 841(a) count. *See United States v. Powell*, 469 U.S. 57, 67 (1984) ("Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient.") (cleaned up).

[3]      *See, e.g.,* Dictionary.com (defining the adjective "lit" to include slang meaning "under the influence of liquor or narcotics"), available at https://www.dictionary.com/browse/lit [https://perma.cc/4HVD-DD7P] (last visited November 20, 2025); UrbanDictionary.com (defining the adjective "lit" to include "high, stoned, out of it"), available at https://www.urbandictionary.com/define.php?term=lit [https://perma.cc/69TX-3NTY] (last visited November 20, 2025).

district court failed to orally pronounce or properly incorporate the non-mandatory conditions of supervised release that were included in the judgment of conviction, as required by *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020). We agree that a *Rogers* error occurred, which makes it unnecessary to consider Scott's other sentencing challenges.

In *Rogers*, this court held that a district court must orally pronounce at sentencing all nonmandatory conditions of supervised release. *Id.* at 297-98. This obligation can be satisfied "through incorporation—by incorporating, for instance, all Guidelines 'standard' conditions when it pronounces a supervised-release sentence, and then detailing those conditions in the written judgment." *Id.* at 299. "Discretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities; the defendant has not been sentenced to those conditions, and a remand for resentencing is required." *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021).

In this case, the judgment of conviction included thirteen standard conditions of supervised release. The district court did not orally pronounce those conditions during sentencing but instead stated that Scott was required to "comply with the standard conditions of supervised release that have been adopted by this Court and are incorporated into this judgment." J.A. 355. In *United States v. Smith*, 117 F.4th 584 (4th Cir. 2024), the district court announced that it was imposing the "standard conditions of supervised release that have been adopted by this Court—that is, this Court in the Eastern District of Virginia." *Id.* at 606. We found that language inadequate to avoid a *Rogers* error because "the Eastern District of Virginia did not then have a standing order—or any order—adopting 'standard conditions of supervised release,'" thus making unclear what conditions the district court

9

intended to impose. *Id.* This case before us likewise comes from the Eastern District of Virginia, and the language used by the district court here is substantively identical to that found wanting in *Smith*. Accordingly, as the government concedes, *Smith* is controlling and compels the conclusion that the district court committed a *Rogers* error when sentencing Scott.

"[D]efendants who succeed on *Rogers* claims are entitled to a full vacatur of their sentences and remand for resentencing if they so request." *United States v. Kemp*, 88 F.4th 539, 547 (4th Cir. 2023) (cleaned up). Because Scott has requested a full resentencing, we must vacate the entirety of his sentence. Under these circumstances, "we need not and should not proceed further to reach his additional arguments about his prior sentencing." *Id.* at 547 n.4 (cleaned up).

IV.

Accordingly, for the foregoing reasons, we affirm Scott's conviction but vacate his sentence and remand for plenary resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

10