**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4423**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

AMANDA MARIE TOSTADO,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:21-cr-00383-FL-2)

_____

Argued: December 11, 2025                                          Decided:  March 31, 2026

_____

Before DIAZ, Chief Judge, and RUSHING and HEYTENS, Circuit Judges.

_____

Vacated and remanded for resentencing by published opinion. Judge Heytens wrote the opinion, which Chief Judge Diaz joined. Judge Rushing wrote a dissenting opinion.

_____

**ARGUED:** Sean Paul Vitrano, VITRANO LAW OFFICES, PLLC, Wake Forest, North Carolina, for Appellant. Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

TOBY HEYTENS, Circuit Judge:

There is a "material discrepancy between" the "written and orally articulated discretionary conditions of supervision" the district court imposed on defendant Amanda Tostado. *United States v. Bullis*, 122 F.4th 107, 117 (4th Cir. 2024). That was error. See, *e.g.*, *United States v. Rogers*, 961 F.3d 291, 294 (4th Cir. 2020). And under this Court's precedent, the remedy is to vacate and remand for resentencing. See, *e.g.*, *United States v. Singletary*, 984 F.3d 341, 342 (4th Cir. 2021).

The government offers a series of counterarguments, all of which this Court has already rejected or are incompatible with the nature of *Rogers–Singletary* errors. Contrary to the government's assertion, our cases do not hold that a "district court's written judgment *should* reflect its in-court pronouncement." U.S. Br. 7 (emphasis added). Instead, *Rogers* and its progeny hold that the in-court pronouncement *is* the sentence and controls over any contrary or additional language in the written judgment. Here, as in previous cases, the government's arguments reflect an unwillingness to accept "the fundamental nature of a *Rogers* error." *Singletary*, 984 F.3d at 346.

I.

Tostado pleaded guilty to two drug offenses. During her sentencing hearing, the district court orally sentenced Tostado to 125 months of imprisonment and announced "a number of conditions" of supervised release "that w[ould] apply" when Tostado got "out of prison." JA 55. That same day, the court entered a written judgment listing various "mandatory," "standard," and "special" conditions of supervised release. JA 63–65. Tostado appeals, asserting (as relevant here) that the written judgment contains materially

2

different supervision conditions than those orally pronounced at the sentencing hearing.[1]

As always, "we review the consistency of [Tostado's] oral sentence and the written judgment de novo." *Rogers*, 961 F.3d at 296.

## II.

We conclude there is at least one *Rogers–Singletary* error here because the warrantless-search condition in the written judgment differs materially from the one the district court announced orally during Tostado's sentencing. Here is what the district court told Tostado about warrantless searches during the hearing:

> Obviously in order to supervise you effectively it's going to be necessary for you to submit to warrantless searches, but only if there's suspicion, a reasonable suspicion to think you're breaking the law or violating supervised release, *or if the probation officer—sometimes for safety issues, for example, no suspicion, but safety issues they have to conduct a search, and you'll agree to that*.

JA 56–57 (emphasis added). In contrast, the written judgment states:

> The defendant shall submit to a search, at any time, with or without a warrant, and by any law enforcement or probation officer, of the defendant's person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant*, or by any probation officer in the lawful discharge of the officer's supervision functions*.

JA 65 (emphasis added).

A single question reveals at least one material difference between these two conditions: *When* may a probation officer who lacks reasonable suspicion that Tostado is

---

[1] We previously granted the government's motion to dismiss other aspects of this appeal that were covered by an appeal waiver in Tostado's plea agreement.

violating the law or a different condition of her supervised release nonetheless conduct a warrantless search? During the sentencing hearing, the district court identified one—and only one—valid basis for such a search: "safety issues." JA 57. In contrast, the written judgment imposes no such limitation, permitting Tostado's probation officer to conduct a warrantless search so long as it is part of "the lawful discharge of the officer's supervision functions." JA 65. And because a probation officer's lawful authority sweeps far beyond simply ensuring people's safety, the latter formulation is "substantially broader" than the district court's "oral pronouncement." *Bullis*, 122 F.4th at 118; see 18 U.S.C. § 3603(3) (directing probation officers to "use all suitable methods . . . to aid . . . a person on supervised release who is under [their] supervision, and to bring about improvements in his conduct and condition").

The government does not deny that the district court described the warrantless-search condition differently at sentencing than in the written judgment. Instead, the government reminds us that our *Rogers–Singletary* jurisprudence is concerned only with "material" discrepancies and of our repeated statements that "when the oral pronouncement is ambiguous, the written judgment's different language may serve to clarify the sentence." *United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024) (quotation marks removed); accord *Rogers*, 961 F.3d at 299. Fair enough. But we can imagine few more obviously material issues than *when* someone—including a person on supervised release—is subject to searches the Fourth Amendment would otherwise forbid. See *Bullis*, 122 F.4th at 118. And here the written judgement purports to change or add to

4

what the district court said at sentencing rather than clarifying an ambiguity in the oral pronouncement.

Resisting this straightforward interpretation, the government emphasizes that the district court used the words "for example" when explaining when Tostado's probation officer could conduct warrantless searches without reasonable suspicion. JA 57. Based on those two words, the government argues the "safety issues" the district court referenced were simply one *example* of situations when Tostado's probation officer could a conduct warrantless and suspicionless search rather than a limit on the universe of situations in which the probation officer could do so. See Oral Arg. 28:59–29:53.

That argument does not fix the *Rogers–Singletary* problem. Even if we accept the government's proposed interpretation of what the district court said, that raises an immediate follow-up question: *When else* may a probation officer conduct a warrantless and suspicionless search? The oral pronouncement simply does not say. Thus, no matter how we read the sentencing transcript, the written judgment purports to limit Tostado's liberty in ways the district court did not announce in her presence—the very thing our *Rogers–Singletary* line of cases forbids. See *Rogers*, 961 F.3d at 296 ("[A]ll non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing"). And "[b]y itself, that error requires that we vacate [Tostado's] sentence and remand for the district court to conduct the sentencing anew." *Singletary*,

5

984 F.3d at 344.[2]

### III.

The government's contrary arguments do not persuade us.

First, the government suggests Tostado was tardy in raising this issue because she did not object during the district court's oral pronouncement. See U.S. Br. 5, 7. Yet *Rogers* rejected that exact argument. As *Rogers* explained, a claim that a supervision condition contained in a written judgment is invalid because the district court did not orally announce it at sentencing arises, "almost by definition, only after [the] sentencing hearing and after the judgment was entered and final." 961 F.3d at 295. For that reason, *Rogers* held that a defendant need not object during the sentencing hearing to preserve a *Rogers–Singletary* claim. See *id.*

Second, the government insists this situation is special because the language in the written judgment matched the language that had been proposed in Tostado's Presentence Report—to which, the government adds, Tostado never objected. See U.S. Br. 4, 9–12. But this Court's decisions in *Bullis* and *United States v. Cisson*, 33 F.4th 185 (4th Cir. 2022), explain why that argument is wrong. "Unless and until a district court adopts a

---

[2] Because "one rotten apple spoils the whole barrel," *Mathis*, 103 F.4th at 198, we need not decide whether the district court's written judgment contains any other *Rogers–Singletary* errors. We note, however, that the district court's oral discussion of the "standard" conditions of supervised release in this case is quite similar—indeed, at times, almost word-for-word—to the one this Court deemed inadequate in *Bullis*. Compare JA 56–57, with *Bullis*, 122 F.4th at 112. We also reject the government's suggestion that Tostado's failure to challenge other special conditions contained in the written judgment on *Rogers–Singletary* grounds necessarily means those conditions were free from error.

presentence report's recommendations, those recommendations remain just that: nonbinding *recommendations*." *Bullis*, 122 F.4th at 118 (quoting *Cisson*, 33 F.4th at 193). Because the "search condition" proposed in Tostado's PSR "was nothing more than a nonbinding recommendation," she "had no reason to object to its contents." *Id.* Of course, the PSR's formulation of the warrantless-search condition put Tostado on notice that the district court *could* (or even *might*) impose that particular condition. But here the district court never stated that it was "adopt[ing]" the PSR's proposed conditions of supervised release. *Id.* at 118–19. Indeed, the search condition that the court announced during the sentencing hearing matches neither the PSR nor the written judgment.

Finally, the government argues that any *Rogers–Singletary* error is harmless because of a term contained in Tostado's plea agreement. As the government conceded at oral argument, see Oral Arg. 22:12–:27, 23:19–:47, this Court has never held a *Rogers–Singletary* error harmless and has routinely vacated and remanded for resentencing without conducting a separate harmless-error inquiry.[3] See *Singletary*, 984 F.3d at 347 ("The very point of *Rogers* . . . is that we may not simply assume that whether a defendant

---

[3] For just this Court's *published* opinions doing so, see *Rogers*, 961 F.3d at 294; *Singletary*, 984 F.3d at 342; *United States v. Kemp*, 88 F.4th 539, 546–47 (4th Cir. 2023); *United States v. Newby*, 91 F.4th 196, 200 (4th Cir. 2024); *United States v. Lassiter*, 96 F.4th 629, 640 (4th Cir. 2024); *Mathis*, 103 F.4th at 195; *United States v. Smith*, 117 F.4th 584, 603–07 (4th Cir. 2024); *Bullis*, 122 F.4th at 117; *United States v. Contreras*, 149 F.4th 349, 377 (4th Cir. 2025); *United States v. Lamborn*, 159 F.4th 230, 252 (4th Cir. 2025).

7

is present for [her] sentencing will make no difference to the sentencing court's supervised-release decisions.").

But even assuming *some Rogers–Singletary* errors could be harmless, we conclude this one is not. In an apparent bid to head off a future *Rogers–Singletary* claim, Tostado's plea agreement states that she agrees "to abide and be bound by the supervised release condition of warrantless searches [and other conditions], regardless of whether th[o]se conditions are orally pronounced by the court at sentencing as long as they are included in the judgment." Sealed JA 73.[4] But courts—not parties—impose sentences, and this is not a case in which the district court accepted a plea agreement requiring it to impose a particular sentence. See Fed. R. Crim. P. 11(c)(1)(C), (3)(A), (4), and (5). And because the warrantless-search condition contained in the plea agreement was not orally announced at sentencing, our *Rogers–Singletary* cases teach that condition was *not* "included in the judgment." Sealed JA 73; see, *e.g.*, *Singletary*, 984 F.3d at 345 ("[T]he heart of a *Rogers* claim is that discretionary conditions appearing for the first time in a written judgment in fact have *not* been 'imposed' on the defendant."). We thus have no need to reach a broader question: Whether a defendant may ever, via plea agreement,

---

[4] This language was quoted in the parties' unsealed briefs and discussed at oral argument. See *United States v. Heyward*, 42 F.4th 460, 467 n.4 (4th Cir. 2024) (unsealing quotations from a sealed joint appendix that were "discussed by the parties in their unsealed supplemental briefs and at oral argument").

waive the "right to be present when . . . sentenced" that forms the foundation for any *Rogers–Singletary* claim. *Rogers*, 961 F.3d at 296 (discussing Fed. R. Crim. P. 43(a)(3)).

## IV.

We end with one final point. At oral argument, questions arose about whether a defendant who claims a district court committed a *Rogers–Singletary* error has standing to appeal the final judgment. To be sure, the government has never made that assertion and disclaimed any such position at oral argument. Still, like every Article III court, we have an independent obligation to satisfy ourselves that we have jurisdiction—including that the appellant has standing to appeal. See, *e.g.*, *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 (2019). And even though this Court has decided numerous *Rogers–Singletary* cases without ever suggesting there might be a standing problem (see *supra* note 3), we do not ever appear to have addressed this particular question. Doing so now, we hold that a defendant who believes her written judgment contains a provision not orally pronounced at sentencing has standing to appeal based on that claim alone.

"[J]ust as it is important not to confuse weakness on the merits with absence of Article III standing," *King v. Youngkin*, 122 F.4th 539, 545 (4th Cir. 2024) (alterations and quotation marks removed), the same goes for strength on the merits. True, a defendant whose *Rogers–Singletary* claim *succeeds* on appeal will obtain a judicial determination that at least one condition of supervised release appearing in her written judgment is a "legal nullit[y] to which the defendant has never been sentenced" "in the first place." *United States v. Newby*, 91 F.4th 196, 199, 200 (4th Cir. 2024) (quotation marks

9

removed); accord *United States v. McLaurin*, 168 F.4th 693, 701 (4th Cir. 2026); *Singletary*, 984 F.4th at 345. But that is only true *after* the defendant's *Rogers–Singletary* claim succeeds, and *Rogers–Singletary* arguments can fail too. See, *e.g.*, *United States v. Nji*, 159 F.4th 259, 276 (4th Cir. 2025). And when a *Rogers–Singletary* claim fails, the defendant is bound by the written judgment's terms and subject to all the consequences that could flow from violating them. See *Rogers*, 961 F.3d at 300 (noting that supervised release conditions "restrict defendants' liberty and put defendants at risk of reincarceration, sometimes for conduct that is otherwise lawful").

Like a person who believes a statute that imposes heavy penalties is unlawful has standing to challenge that statute without ever violating it, see, *e.g.*, *Ex parte Young*, 209 U.S. 123 (1908), a criminal defendant who believes a written judgment contains supervision conditions that were never validly imposed in the first place also has standing to appeal. Until a court actually invalidates a potentially improper term of supervised release, even a person who believes the term is invalid has—at minimum—a strong incentive to treat the condition as binding and follow it. For that reason, such a term has the practical effect of "requir[ing] or forbid[ding] some action by the [defendant]," thus making "standing . . . easy to establish." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024).

\*      \*      \*

The judgment is vacated and the case is remanded for resentencing consistent with this opinion.

*SO ORDERED*

10

RUSHING, Circuit Judge, dissenting:

The majority vacates Tostado's sentence and remands for a full resentencing because, when imposing one supervised release condition, the district court did not recite the condition verbatim from the written judgment but attempted to provide a helpful example. The Court demands full resentencing even though, in her plea agreement, Tostado agreed to be bound by the condition as written in the judgment, whether the district court orally announced it or not. Our precedent in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and its progeny does not require that result. Instead, *Rogers* allows the written judgment to clarify an ambiguous sentencing pronouncement. That is what happened here.

Regrettably, our *Rogers* jurisprudence becomes less coherent with each decision we render. Just weeks ago, this Court held that "conditions . . . contained in [the] written judgment, but . . . never pronounced orally at [the defendant's] sentencing" are "'nullities' to which [the defendant] was never sentenced" and therefore cannot be the basis for revoking supervised release. *United States v. McLaurin*, 168 F.4th 693, 702 (4th Cir. 2026) (quoting *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021)). By contrast, here, in an effort to explain how a defendant can appeal from such nullities, the majority proclaims the opposite: that a "defendant is bound by the written judgment's terms and subject to all the consequences that could flow from violating them." Maj. Op. 10. At some point, we have to fix this mess.

I respectfully dissent.

11

I.

According to our precedent, "where the precise contours of an oral sentence are ambiguous, we may look to the written judgment to clarify the district court's intent." *Rogers*, 961 F.3d at 299 (citing *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003)).  By contrast, when the written judgment "imposes a new condition by outlining an additional obligation" that could not "reasonably be expected to flow from" the oral pronouncement, a material discrepancy exists that requires resentencing. *United States v. Mathis*, 103 F.4th 193, 198 (4th Cir. 2024).

Applying these principles, I would affirm.  Tostado alleges two *Rogers* errors, only one of which the majority resolves.  After explaining why neither alleged error requires resentencing, I address Tostado's plea agreement, in which she agreed to be bound by the very conditions she contests on appeal.

A.

First, Tostado challenges the warrantless search condition.  At the sentencing hearing, the district court informed Tostado that, "[o]bviously in order to supervise you effectively it's going to be necessary for you to submit to warrantless searches" in two circumstances: "if there's suspicion, a reasonable suspicion to think you're breaking the law or violating supervised release," and searches by "the probation officer" with "no suspicion."  J.A. 56–57.  Regarding the second category, the court explained that "sometimes for safety issues, *for example*, no suspicion, but safety issues they have to conduct a search, and you'll agree to that." J.A. 57 (emphasis added).  The court did not give other examples of warrantless, suspicionless searches by a probation officer.

12

Tracking the conditions proposed in the presentence report, the written judgment required Tostado to consent to warrantless searches "by any law enforcement or probation officer" with reasonable suspicion "concerning a violation of a condition of supervised release or unlawful conduct," as well as suspicionless searches "by any probation officer in the lawful discharge of the officer's supervision functions." J.A. 65.

The district court orally sentenced Tostado to warrantless, suspicionless searches by a probation officer during her supervised release. To the extent the district court's sole example—"safety issues"—created any ambiguity about whether the court was narrowing the condition to that single circumstance, the written judgment clarified that the full breadth of the condition applied and that "safety issues" was merely one example, just as the district court had said. *See Rogers*, 961 F.3d at 299. In analogous cases, we have rejected claims of *Rogers* error when district courts provide defendants with salient examples of the conditions they have imposed. *See*, *e.g.*, *United States v. Nji*, 159 F.4th 259, 276 (4th Cir. 2025).

Unfortunately, the majority's holding encourages district courts to say less by way of helpful explanation to defendants at their sentencing hearings. It's unlikely that the majority would have found a material discrepancy if the district court had simply said that Tostado will submit to suspicionless searches by the probation officer and declined to give her any example or explanation of what that might look like. The solution for a district court seeking to avoid vacatur, therefore, is to read directly from a written judgment prepared ahead of time with no deviation or, safer still, to incorporate the conditions in the presentence report by reference, without even stating them aloud to the defendant. *See*

13

*Rogers*, 961 F.3d at 299 (authorizing incorporation by reference). This approach incentivizes district courts to stick to "robotic incantations" instead of explaining supervised release conditions in a way that is more personal, and understandable, to the defendant. *United States v. Maiorana*, 153 F.4th 306, 315 (2d Cir. 2025) (en banc) (Menashi, J., dissenting) (internal quotation marks omitted); *cf. United States v. Turner*, 122 F.4th 511, 520 (4th Cir. 2024) (*Rogers* "was never intended to be an empty formality or a trap for district court judges who go beyond incorporation to provide an additional layer of protection to the defendants they are sentencing."). Our decisions should not encourage that result.

B.

Second, Tostado challenges imposition of the discretionary standard conditions. Tostado's written judgment included all thirteen of the standard supervised release conditions adopted by the United States District Court for the Eastern District of North Carolina in Standing Order 21-SO-5. *See In re: Mandatory and Standard Conditions of Probation and Supervised Release*, E.D.N.C. Standing Order No. 21-SO-5 (May 6, 2021). At the sentencing hearing, the district court informed Tostado that "when you get out of prison, there are a number of conditions that will apply." J.A. 55. After mentioning the mandatory conditions, the district court explained that "[t]he next set of conditions" it was imposing "are standard conditions. They're adopted in this district in an order that's been of record for a couple of years now." J.A. 55–56. The district court went on to highlight five examples of those conditions in plain English (e.g., "Don't lie to your probation officer." "Work full-time.") and warned Tostado that the court was preparing to sentence

14

someone else for violating standard conditions, emphasizing to Tostado that "[s]tandard conditions have meaning." J.A. 56. On appeal, Tostado argues that the district court did not impose the other eight standard conditions in Standing Order 21-SO-5 that the court did not specifically articulate during her sentencing hearing.

Tostado's argument does not persuade. *Rogers* allows district courts to impose supervised release conditions by incorporating "a court-wide standing order that lists certain conditions." 961 F.3d at 299. And Standing Order 21-SO-5 provides that "any reference in the pronouncement of a sentence to the 'Standard Conditions of Supervision as adopted in the Eastern District of North Carolina' shall be deemed to refer to and incorporate" those standard conditions. Standing Order No. 21-SO-5, at 1. The district court here expressly imposed the "standard conditions . . . adopted in this district in an order . . . of record," following the Standing Order's protocol. J.A. 55–56. This reference to the Standing Order eliminated the ambiguity identified in *United States v. Bullis*, 122 F.4th 107, 119 (4th Cir. 2024).[1] Tostado nevertheless contends that, by summarizing only some of the standard conditions, the district court failed to impose the others. Our Court rejected that exact argument in *United States v. Nji*. There, as here, the district court incorporated standard conditions in a standing order and provided a few examples from among them that it found especially salient. *Nji*, 159 F.4th at 276. This Court rejected the defendants' contention that the district court's additional explanation rendered the

---

[1] Indeed, the district court's specific reference to the standing order makes this case indistinguishable in any meaningful sense from the cases quoted in *Bullis* as examples that "satisfy this court's requirement that oral pronouncements of sentencing expressly incorporate written conditions." *Bullis*, 122 F.4th at 119 n.3.

incorporation ambiguous to the point of creating a material discrepancy. *Id.* Following *Nji*, Tostado's second assignment of error likewise fails.

C.

Vacatur is an especially unsuitable remedy here since any error, assuming it exists, is harmless as a practical matter. In her plea agreement, Tostado agreed "to abide and be bound by the supervised release condition of warrantless searches and all conditions of supervision as adopted in the Eastern District of North Carolina in Standing Order 21-SO-5, regardless of whether these conditions are pronounced by the court at sentencing as long as they are included in the judgment." Sealed J.A. 73. The warrantless search condition and Standing Order conditions are included in Tostado's written judgment; therefore, she is contractually bound to abide by them.[2] Thus, even if the district court did not orally sentence Tostado to those conditions, she has nevertheless contractually agreed to follow them.[3] In other words, whether the district court orally pronounced them or not, Tostado must follow the warrantless search condition and Standing Order conditions at least as a contractual matter.[4]

---

[2] Tostado's presentence report, to which she did not object, also proposed these conditions exactly as they later appeared in the written judgment.

[3] Defendants in noncapital cases are permitted to waive the right to be present for sentencing, but the Government does not argue that Tostado's plea agreement operated as such a waiver regarding these conditions. *See* Fed. R. Crim. P. 43(c)(1)(B).

[4] Questions might arise later if Tostado were to violate one of these conditions. If the district court did not sentence her to them, she would not be violating a court order but would instead be violating a term of her plea agreement. Of course, if the parties want these conditions enforceable by a court order, they can move the district court to modify
(Continued)

16

To avoid confronting the harmless error question, the majority contorts Tostado's plea agreement. Specifically, the majority opines that the phrase "included in the judgment" as used in the plea agreement means "orally announced at sentencing." Maj. Op. 8. If the warrantless search condition was not orally announced at sentencing, the majority reasons, it was not "included in the judgment" and therefore does not contractually bind Tostado.

The majority is incorrect. We use traditional principles of contract interpretation to understand plea agreements. *United States v. Petties*, 42 F.4th 388, 393 (4th Cir. 2022). One of those black-letter principles is that the text must be construed as a whole. *Miller v. Robertson*, 266 U.S. 243, 251 (1924) ("The intention of the parties" to a contract "is to be gathered . . . from the whole instrument."); *see* A. Scalia & B. Garner, *Reading Law* 167 (2012). The plea agreement states that Tostado agrees to abide by the conditions "regardless of whether [they] are pronounced by the court at sentencing as long as they are included in the judgment." Sealed J.A. 73. This phrasing draws a clear distinction between the "pronounce[ment] by the court at sentencing" and "the judgment," indicating they are two different things. In context, the best read of the "the judgment" is thus the written judgment—that is, the official court document titled "Judgment in a Criminal Case." J.A. 60.

---

the supervised release conditions. *See* 18 U.S.C. § 3583(e)(2) (authorizing the district court to "modify, reduce, or enlarge the conditions of supervised release"); Fed. R. Crim. P. 32.1(c) (procedures for modification).

17

The majority, by contrast, renders the provision wholly ineffective by reading "the judgment" to be the same as the oral pronouncement. *See* Scalia & Garner, *supra*, at 174 ("[E]very provision is to be given effect . . . . None should needlessly be given an interpretation that causes it . . . to have no consequence."). It imposes no obligation "regardless" of anything else, writing that word out of the contract. Under the majority's interpretation, Tostado agreed to be bound "regardless of whether those conditions [were] pronounced by the court at sentencing as long as they" were pronounced by the court at sentencing. Sealed J.A. 73. That circular interpretation may dodge the harmless error question, but it does not accurately reflect the agreement of the parties.

## II.

A final word about the state of our *Rogers* jurisprudence is in order. Other members of this Court have accurately catalogued significant problems with this line of cases. *See McLaurin*, 168 F.4th at 712–713 (Niemeyer, J., dissenting); *United States v. Smith*, 117 F.4th 584, 607–608 (4th Cir. 2024) (Agee, J., concurring in part and concurring in the judgment); *United States v. Lassiter*, 96 F.4th 629, 640–642 (4th Cir. 2024) (Agee, J., concurring part and concurring in the judgment); *United States v. Kemp*, 88 F.4th 539, 547–553 (4th Cir. 2023) (Quattlebaum, J., concurring). Namely, "the internal reasoning of *Rogers* and [its companion, *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021),] is inconsistent and conflicts with our precedent concerning errors in a written judgment." *Kemp*, 88 F.4th at 547 (Quattlebaum, J., concurring). Our cases "inconsistently characterize[] the right to be present as procedural at times and as substantive at others," leading to "vastly different remedies for similar types of errors." *Id.* at 550. And

18

"requiring a full resentencing is unnecessary to adequately remedy *Rogers-Singletary* errors and out of step with how other courts of appeals address these issues." *Id.* at 547. I will not elaborate further on these well documented concerns.

I must briefly note, however, that as this Court extends the "nullity" theory of *Rogers* errors, it increases the incoherence of our precedent and greases the slippery slope toward absurdity. Consider, for example, consistently applying the nullity theory underlying this Court's recent decision in *McLaurin* to the facts of this case.

In *McLaurin*, the Court held that "under *Rogers*, the failure to pronounce . . . conditions orally render[s] them 'nullities' to which [the defendant] was never sentenced" and therefore "[t]he district court lacked authority to revoke supervised release based on" the defendant's violation of those conditions. *McLaurin*, 168 F.4th at 702. Reliance on the written judgment to determine the defendant's conditions of supervised release, the Court reasoned, was plain error. *Id.* That remained true even years after the time for appealing those conditions had passed, the Court explained, because nullities can "*never bec[o]me the law of the case.*" *Id.* at 701; *see id.* at 702–703.

Here, Tostado complains that she was "sentenced in absentia" when the district court included conditions in the written judgment that she claims were not pronounced orally at the sentencing hearing. Oral Arg. at 1:47:36–1:47:43. Under the nullity theory of *Rogers* errors, however, Tostado has not been sentenced to anything other than what was announced at the sentencing hearing. Thus, it was legally impossible for her to be sentenced in absentia. That leaves Tostado in an internally contradictory situation where, by arguing that a sentence was imposed on her illegally, she in fact argues that the sentence

19

was not imposed on her at all.  Between these two premises, one must be wrong.  Either discretionary conditions appearing for the first time in the written judgment have a legal effect that can inflict a cognizable injury or they are a nullity of no consequence.  Our precedent emphatically holds the latter, so Tostado here effectively objects to the contents of a piece of paper which imposes no legal obligations on her and therefore cannot harm her on its own.

The majority forgets *McLaurin* when it asserts that conditions appearing in the written judgment but not the sentencing transcript "'require[] or forbid[] some action by the [defendant].'"  Maj. Op. 10 (quoting *FDA v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1556 (2024)).  Under our precedent, conditions of supervision appearing solely in the written judgment cannot be enforced against the defendant at any point.  *McLaurin*, 168 F.4th at 703.  Whether a defendant's *Rogers* claim succeeds or fails on appeal (or is forfeited entirely), *McLaurin* teaches that the defendant is decidedly *not* "bound by the written judgment's terms and subject to all the consequences that could flow from violating them," as the majority inaccurately claims.[5]  Maj. Op. 10.  Under our precedent, Tostado is appealing from nothing and may not even be able to show a threat of erroneous enforcement of the nullity given how "plain" the law is:  "There is no ambiguity in the application of *Rogers*."  *McLaurin*, 168 F.4th at 702.

---

[5] The majority later hedges its assertion about the binding nature of a written judgment, describing a written judgment as "ha[ving] the practical effect" of requiring or forbidding action only because a supervisee has "a strong incentive to treat" conditions to which she was never sentenced—which we have declared to be nonbinding nullities—"as binding and follow" them.  Maj. Op. 10.  Such internal inconsistency is the hallmark of our *Rogers* caselaw.

20

21

All of this only further illustrates "the mess that has resulted" from *Rogers* and its progeny. *Smith*, 117 F.4th at 607 (Agee, J., concurring in part and concurring in the judgment). The time has come to correct our errors and redeem our sentencing precedent from absurdity. I respectfully dissent.