**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2711
_____

UNITED STATES OF AMERICA,

Appellant

v.

ZAVKIBEG ASHUROV

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2-11cr-00533-001)
District Judge: Honorable Harvey Bartle, III
_____

Argued: May 16, 2013
_____

Before: SLOVITER, FUENTES, and ROTH, *Circuit Judges*

(Opinion Filed: August 12, 2013)
_____

Robert A. Zauzmer
Anthony J. Wzorek **[ARGUED]**
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

*Attorney for Appellant United States of America*

Leigh M. Skipper
Brett G. Sweitzer **[ARGUED]**
Federal Community Defender Office
601 Walnut Street, Suite 540 West
Philadelphia, Pennsylvania 19106

*Attorneys for Appellee Zavkibeg Ashurov*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

After a jury convicted Zavkibeg Ashurov of presenting a materially false statement in an immigration form, the District Court entered a judgment of acquittal, concluding that the statute of conviction required, but that the Government had not proved, that the statement was made under oath. The relevant statute punishes

> [w]hoever **knowingly makes under oath**, or . . . under penalty of perjury . . . knowingly subscribes as true, any false statement with respect to a material fact in any . . . document

required by the immigration laws . . . or **knowingly presents** any such . . . document which contains any **such** false statement or which fails to contain any reasonable basis in law or fact.

18 U.S.C. § 1546(a) (emphasis added). The United States asks that we reinstate Ashurov's conviction, arguing that the "knowingly presents" clause of the statute, which Ashurov was charged with violating, does not require that the materially false statement be made under oath. After carefully considering the opposing arguments regarding the proper construction of this complex law, we conclude that it is grievously ambiguous as to whether the "knowingly presents" clause requires an affirmation made under oath. Accordingly, we apply the rule of lenity and affirm the judgment of acquittal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ashurov, a citizen of Tajikistan, entered the United States under a visitor's visa in 2007 and subsequently sought to obtain an F-1 student visa that would permit him to enroll in an English language program and temporarily remain in the United States.

The application to adjust Ashurov's status and obtain the F-1 visa requires the submission of an Immigration and Naturalization Service Form I-20, which has been described as a "school's petition to the U.S. Government . . . to sponsor a student for enrollment." App. 96. The form requires that a

3

school "designated official"[1] provide information regarding the candidate and the educational program he or she intends to complete, and certify under penalty of perjury that the information provided therein is true and that the student will be required to pursue a "full course of study" at the school. In the context of a language program, "full course of study" means at least eighteen hours of classroom instruction per week. 8 C.F.R. § 214.2(f)(6)(i)(D). Form I-20 also requires a "student certification" whereby students agree to comply with the terms and conditions of their admission as students and certify that they seek admission "for the purpose of pursuing a full course of study." That certification is not made under penalty of perjury.

Ashurov first sought adjustment of his status in April 2008 pursuant to U.S. Citizenship and Immigration Services ("USCIS") Form I-539, which, generally, is used to apply to extend or change an individual's non-immigrant status. Included with that form was a Form I-20 wherein Ashurov stated that he planned to study English as a Second Language at the CMG School in Trevose, Pennsylvania. The form was certified under penalty of perjury by the CMG School's designated official, and was signed by Ashurov without an oath, as the form provides. The application was granted later that year and Ashurov obtained a student visa. In April 2009 and again in April 2010, Ashurov presented identical Forms

---

[1] As part of the process to obtain regulatory approval to enroll foreign nationals possessing student visas, schools must name "designated school officials" who, among other things, certify compliance with federal regulations regarding enrollment of foreign nationals, and sign the Form I-20. 8 C.F.R. § 214.3(a)(1)(ii), (l)(1).

4

I-20 to the CMG School officials (all signed by Ashurov, but not sworn under oath), who in turn completed them, executed them under penalty of perjury, and submitted them to USCIS. In 2010, federal authorities began an investigation of the CMG School, seizing business records that revealed that the school was not providing students the required eighteen hours of weekly in-class instruction. The school was eventually closed and its designated school official was indicted. Records also revealed that Ashurov's attendance at the CMG School began to decline in 2009 and eventually became insufficient to meet the weekly hour requirement.

Ashurov was originally charged with violating 18 U.S.C. § 1546(a) by "knowingly making under oath" a materially false statement in the Forms I-20, but, given that he did not therein certify anything under oath, a superseding indictment was returned charging him only with "knowingly presenting a false statement." 18 U.S.C. § 1546(a). A jury convicted him of one count, based on the April 2010 form, but the District Court granted him a judgment of acquittal, concluding that the oath requirement applied to both the "knowingly makes" and "knowingly presents" clauses and that, alternatively, it would apply the rule of lenity. The Government now appeals.

## II. <u>ANALYSIS</u>

At issue is the fourth paragraph of 18 U.S.C. § 1546(a), which punishes:

> Whoever **knowingly makes under oath**, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly

subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or **knowingly presents** any such application, affidavit, or other document which contains any **such** false statement or which fails to contain any reasonable basis in law or fact.

(emphasis added). Specifically, Ashurov was indicted for violating the "knowingly presents" portion of the statute. The question in this case is what exactly that clause proscribes.[2]

## A.    Textual Canons of Construction

We begin, as always, with the text of the law. In framing the discussion of what the "knowingly presents" clause prohibits, the parties agree that the provision as a whole lists two crimes: one, which is referred to as the "making" clause, punishes "*knowingly mak[ing]*" under oath a materially false statement in an immigration-related document; the other, which Ashurov was charged with violating and which is referred to as the "presenting" clause, punishes "*knowingly present[ing]*" an immigration-related document with a materially false statement. 18 U.S.C. § 1546(a). The sole point of contention is whether the "knowingly presents" crime, by virtue of the use of the word "such," also requires that the statement that Ashurov

---

[2]    The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3731. We review *de novo* an interpretation of a statute of conviction. *United States v. Randolph*, 364 F.3d 118, 121 (3d Cir. 2004).

6

presented be made under oath by incorporating that element from the "making" clause. The Government contends that it does not, thereby dismissing the need to prove that Ashurov's Form I-20 statements were made under oath.

We begin with two textual modes of construction: first, the plain meaning of the word "such" and the rule of the last antecedent; and, second, the rule against surplusage. As we shall see, these two textual approaches pull us in polar-opposite directions.

1. Ashurov contends that the words "any such false statement" in the "presenting" clause refer to a false statement with respect to a material fact *that is made under oath*. The only way this interpretation can be correct, however, is if we read "such" to refer both to the adjective clause ("with respect to a material fact") as well as to the verb and adverb ("knowingly makes under oath") of the "making" clause. But, grammatically, the words "under oath" in the "making" clause do not describe the false statement. Instead, they characterize and qualify the *action itself* that the statute punishes, "knowingly makes." As the District Court recognized, "such" means "of the character, quality, or extent previously indicated or implied." *United States v. Ashurov*, Crim. No. 11-533, 2012 WL 1719778, *2 (E.D.Pa. May 16, 2012) (quoting Webster's Ninth New Collegiate Dictionary); *see also* Black's Law Dictionary (9th ed. 2009) (defining "such" as "[t]hat or those; having just been mentioned"). In other words, the use of "such" is meant to invoke a characteristic, a quality, or an extent, and Ashurov's construction requires us to transform the verbs and adverbs in the first clause into adjectives in the second.

7

By contrast, reading the second "such" to reach only "with respect to a material fact" and not "makes under oath" comports with a commonly recognized rule in American jurisprudence that "[t]he word 'such' . . . naturally, by grammatical usage, refers to the last precedent." *Bahre v. Hogbloom*, 295 A.2d 547, 552 (Conn. 1972); *State ex rel. King v. Bd. of Trs. of Firemen's Pension Fund of Kansas City*, 184 S.W. 929, 932 (Mo. Ct. App. 1916) (identifying "such" as a "term of comparison" meaning "of the same kind as that which has been enumerated"). Our Court has also recognized the basic canon that "referential and qualifying words and phrases, where no contrary intention appears, refer *solely* to the last antecedent." *Tippins v. USX Corp.*, 37 F.3d 87, 93 (3d Cir. 1994) (citing Norman J. Singer, Sutherland Statutory Construction § 47.33 (4th ed. 1985)). Here, the oath requirement is not the last thing mentioned in connection with "false statements." The last mentioned qualifier is that they must be made "with respect to a material fact." 18 U.S.C. § 1546(a).

On the other hand, we would be remiss if we did not recall that "this rule of the last antecedent is not an absolute and can assuredly be overcome by other indicia of meaning." *J.C. Penney Life Ins. v. Pilosi*, 393 F.3d 356, 365 (3d Cir. 2004) (internal quotation marks and alterations omitted); *see also Tippins*, 73 F.3d at 93 (explaining that the last antecedent rule applies only "where no contrary intention appears"). Accordingly, although the last antecedent canon favors the Government's reading, we must at the very least satisfy ourselves that no "other indicia of meaning" suggests a contrary outcome. *See Pilosi*, 393 F.3d at 365. *Cf. United States v. Krstic*, 558 F.3d 1010, 1013 (9th Cir. 2010) (specifically refusing to apply the rule of last antecedent to

the use of "such" in the first paragraph of § 1546(a) because "there are several candidates for the 'last precedent'").

2. As it turns out, another important canon of construction does suggest a contrary outcome: the rule against surplusage. Ashurov contends that reading the "presenting" clause as not to include an oath requirement renders the oath requirement in the "making" clause superfluous because if a defendant makes a materially false statement that is not sworn under oath and then presents it, he will be punished even absent the oath. Under such circumstances, the oath requirement of the "making" clause would not have any effect or use. We agree. This very case illustrates how the Government may avoid the oath requirement. Ashurov was first indicted for "making under oath a false statement" in an immigration document but was subsequently re-indicted only for "presenting a false statement" without the oath requirement when it became apparent that his portion of Form I-20 was not sworn to under oath.

Thus, the oath requirement will be superfluous in all cases with a realistic chance of prosecution. As the Government admits, the "maker" of a statement in an immigration document is "usually" also the person who presents it to the authorities, Gov't Br. at 17, or at the very least is also the person who, like Ashurov, "presents" it to a third party who then presents it to authorities. Accordingly, the Government's response that the oath requirement of the "making" clause retains significance "for a maker who does not present the statement," Gov't Reply Br. at 5, is not well taken. It is hard to imagine that the "making" clause was aimed at individuals who swear to a statement under oath in a

9

document he or she leaves lying around that then somehow reaches the authorities.

Ashurov's reading, by contrast, brings symmetry to the statute. It punishes both those who make false statements under oath and those, such as professional preparers, who submit them, while not punishing the maker of an *unsworn* statement any more than it would punish its presenter. To treat the maker and the presenter the same when the statement is made under oath, but differently (and the presenter more harshly) when the maker does not swear an oath seems to us an anomaly, particularly given that, as the Government candidly admits, "[t]he law does not generally punish people for lying unless they expressly acknowledge a legal duty not to do so." Gov't Br. at 17.

Thus, the "fundamental canon" that we must, if possible, give effect to every clause and word of a statute, *see United States v. Kouevi*, 698 F.3d 126, 134 (3d Cir. 2012) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)), points in the opposite direction than the "last antecedent" canon, rendering the statute's text ambiguous.

## B.     Other Canons of Construction

Having found the plain text of paragraph four of § 1546(a) ambiguous, we turn to § 1546(a)'s structure, history, and purpose in aid of our search for the statute's meaning.

### 1.     The Structure of § 1546(a)

10

The Government makes two arguments based on the statute's structure. First, it contends that reading the "presenting clause" to not incorporate the oath requirement is "logical" because the other three paragraphs of § 1546(a) evince a broad desire by Congress to punish all immigration-related offenses, and none requires an oath. Gov't Br. at 15. As the Government notes, the other paragraphs of § 1546(a) proscribe forging immigration documents (paragraph 1), possessing materials used to forge immigration documents (paragraph 2), and impersonating another when applying for immigration benefits (paragraph 3). But we reject this strained argument because it is hard to see how one could even impose an oath requirement on the crimes listed in those three paragraphs, given that most do not even involve statements. Moreover, the "making" clause of paragraph four does contain an oath requirement, despite its absence from the other three paragraphs. Thus, the lack of an oath requirement in the other paragraphs is irrelevant.

Second, the Government points to paragraph one of § 1546(a), which punishes, in relevant part,

> [w]hoever knowingly forges, counterfeits, alters or falsely makes any [immigration document] . . . or receives any such [document] . . . knowing it to be forged, counterfeited, altered, or falsely made.

18 U.S.C. § 1546(a) (paragraph one). The Government notes that this paragraph, like paragraph four, prohibits two acts separated by "or," and "repeats the acts listed in the first clause . . . in the second clause . . . when it requires that the action with the immigration document be done 'knowing it to

11

be forged, counterfeited, altered or falsely made.'" Gov't Br. at 19. Thus, the Government argues, because Congress reiterated the description in the second clause of paragraph one when it wanted it incorporated there, the description "makes under oath" in the "making" clause of paragraph four cannot be incorporated into the "presenting" clause because it was not reiterated there.

This argument sweeps far too broadly. The "presenting" clause of paragraph four already incorporates a non-reiterated description, "with respect to a material fact," by the use of the word "such," as the Government concedes. If reiteration were always required, this would not be the case. A statute should not be construed "upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.).

### 2. The Legislative Amendments to the Fourth Paragraph of § 1546(a)

Unaided by the statute's structure, the Government makes an appeal to its legislative history. More precisely, the Government resorts to past versions of the statute, as "there is no pertinent legislative commentary on any of the amendments" to § 1546(a). Gov't Br. at 20. But none cures the textual ambiguity.

The strongest support from the statute's amendment history that the Government brings to our attention is the fact that in 1996 Congress added the "fails to contain any reasonable basis in law or fact" language to the "presenting" clause. *See* Pub. L. 104-208, Div. C, Title II, § 214, 110 Stat.

12

3009-569 (1996).  There is some force to the Government's argument that it would be illogical to make it a crime to knowingly present an immigration document that "fails to contain any reasonable basis in law or fact," *id.*, regardless of whether the document was completed under oath, while only criminalizing presenting an immigration document containing a sworn false statement.  On the other hand, as Ashurov notes, it is conceivable that "some representations in immigration documents may be so blatantly false . . . that the normal oath requirement is excused."  Ashurov Br. at 31.  More generally, it is hard to surmise the intent of the 1948 Congress based on the pronouncement made by Congress almost fifty years later.  While the 1996 amendment may support the Government, it does not cast enough light on the meaning of the statute to resolve the ambiguity created by the juxtaposition of the canon of the last antecedent modifier and the rule against surplusage.[3]

---

[3]  The remainder of the Government's arguments regarding the legislative amendments to § 1546(a) rest on similar speculation regarding what subsequent Congresses thought of the 1948 statute and are therefore unpersuasive.  We refuse to read any meaning into the fact that in 1952 the statute was amended to include for the first time the "with respect to a material fact" and the "any such false statement" language.  *See* Gov't Br. at 20-21.  That those provisions were added simultaneously does not mean that "any such false statement" refers only to "with respect to a material fact" as the Government would have us conclude.  As the Government concedes, the 1952 amendment also included for the first time the words "any such document," unaccompanied by a parallel addition to the descriptors of "document," making it clear that "any such document" was meant to refer

13

### 3. The Statute's Purpose

The Government's next argument is based on the statute's apparent purpose (although it is not clear from where this purpose is derived), arguing that "those who affirmatively present documents to the immigration authorities . . . knowing that those documents contain materially false statements are far more likely to have fraudulent intent" than those who simply make false statements not under oath. Gov't Br. at 17-18. But this conclusion is not as intuitive to us. One might just as easily argue that "makers" of false statements are more culpable than "presenters" who simply transmit documents. The most that can be said for this policy-based argument is that it can be fairly interpreted to support both readings of the law.

### 4. The Second Circuit's Decision in *United States v. Khalje*

Finally, the Government urges us to adopt the reasoning of the one precedential case that has addressed the question presented here, where the Second Circuit accepted the Government's reading of § 1546(a), reasoning that it:

to language already in the statute at the time of the 1952 amendment. Nor does the fact that the legislative history of the 1996 amendment *fails* to mention that the presenting clause contains an oath requirement support the Government's reading. We will not divine clues from legislative silence regarding an already-existing statute.

> carries out the apparent Congressional purpose of penalizing both those who swear to materially false statements in visa applications and those who present materially false statements in such applications, whether or not the latter swear to such statements.

*United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) (per curiam). But, as the District Court surmised, this analysis "makes no effort to explain, based on the statutory language, why it finds one antecedent is applicable to 'any such false statement' but excludes the other," *Ashurov*, 2012 WL 1719778, *3, and does not otherwise attempt to tackle any of the difficult interpretative hurdles we have in painstaking detail addressed here. Thus, we decline to follow the Second Circuit's holding in *Kahlje*.

## C.    Rule of Lenity

We conclude that having considered textual, contextual, and atextual canons of statutory construction, there "remains a grievous ambiguity" as to the meaning of the fourth paragraph of § 1546(a). *See Barber v. Thomas*, 130 S. Ct. 2499, 2508 (2010). The text of the statute itself points in two divergent directions and neither the statute's structure nor its scarce legislative history convincingly resolve the dichotomy. It is thus proper to invoke the rule of lenity in the defendant's favor. *See id.*

We recognize and reiterate that the "rule of lenity requires more than a difficult interpretative question." *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010). On the other hand, the idea embodied by the rule is that "the citizen

15

is entitled to fair notice of what sort of conduct may give rise to punishment." *McNally v. United States*, 483 U.S. 350, 375 (1987) (Stevens, J., dissenting). In this case, Congress has written a needlessly convoluted statute—a run-on sentence that is but one of four paragraphs contained in a single subclause of § 1546. The sentence consists of 76 words and seven uses of the conjunction "or," and has a complicated history of amendments accompanied by nary an explanation—and carries stiff penalties at that (up to 10 years for run-of-the mill violations but as much as 25 years for some). We have labored through the meandering words of this law and carefully considered the well-presented arguments of both sides, and are still left with grievous doubt as to the statute's meaning. The statute thus falls well short of providing the required fair notice as to what it punishes. Accordingly, we apply the rule of lenity and decline to relax the "knowingly presents" crime of § 1546(a) by removing from it the oath requirement that appears in the "knowingly makes" crime. "If Congress desires to go further, it must speak more clearly than it has." *Id.* at 360 (Majority Op.). In the alternative, the Government is free to amend Form I-20 to require an oath from the applicants who complete it.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the District Court's judgment is affirmed.

16