**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4466**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OLUWATOYIN ABORISADE,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:21-cr-00299-JRR-1)

Argued:  September 11, 2025                     Decided:  January 8, 2026

Before HEYTENS, BENJAMIN, and BERNER, Circuit Judges.

Affirmed by published opinion.  Judge Benjamin wrote the opinion in which Judge Berner joined.  Judge Heytens wrote a dissenting opinion.

**ARGUED:**   Geoffrey  J.H.  Block,  KELLOGG,  HANSEN,  TODD,  FIGEL  & FREDERICK,  P.L.L.C.,  Washington,  D.C.,  for  Appellant.   David  Christian  Bornstein, OFFICE  OF  THE  UNITED  STATES  ATTORNEY,  Baltimore,  Maryland,  for Appellee. **ON  BRIEF:**   Tiberius  T.  Davis,  KELLOGG,  HANSEN,  TODD,  FIGEL  & FREDERICK, P.L.L.C., Washington, D.C., for Appellant.  Kelly O. Hayes, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DEANDREA GIST BENJAMIN, Circuit Judge:

Oluwatoyin Aborisade stood trial for visa fraud and aggravated identity theft for fraudulently preparing immigration visa self-petitions under the Violence Against Women Act of 1994, Pub. L. 103-322, 108 Stat. 1796 (VAWA). At the close of the Government's case-in-chief, the district court denied Aborisade's motion for judgment of acquittal. Aborisade did not renew his motion for judgment of acquittal after presenting his defense to the jury. The jury convicted Aborisade on all counts, and the district court sentenced him to 57 months' imprisonment, followed by 2 years of supervised release.

On appeal, Aborisade challenges the sufficiency of the evidence underlying his convictions for preparing fraudulent VAWA self-petitions. He also argues that a discrepancy between the oral pronouncement and written judgment of his supervised release conditions is a reversible error under *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020).

We reject each of Aborisade's challenges and affirm his conviction and sentence.

I.

A.

An overview of VAWA self-petitions is necessary to understand this case.

Prior to the enactment of VAWA, spouses petitioning for immigration relief had to rely on a United States citizen relative or their lawful permanent resident spouse to file a visa petition. H.R. REP. NO. 103-395, at 37 (1993). Abusive spouses could prevent their nonresident spouse from obtaining lawful immigration status "as a means to control or

2

abuse" a nonresident spouse. *Id*. VAWA, in a broad effort to protect women who are abused in the United States, sought to make it easier for nonresident spouses to petition for an immigrant visa. *Id.* at 25. It created a self-petition process that allows the nonresident spouse to petition without the knowledge or participation of their abuser, "permitting battered immigrant women to leave their batterers without fearing deportation." *Id.*

An applicant may file a self-petition if they (1) are a spouse of a citizen or lawful permanent resident of the United States; (2) are eligible for immigrant classification; (3) are residing in the United States; (4) have resided in the United States with a citizen or lawful permanent resident spouse; (5) have been battered by, or been the subject of extreme cruelty by a citizen or lawful permanent resident spouse during marriage; or is the parent of a child who has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the marriage; (6) are a person of good moral character; (7) are a person whose deportation would result in extreme hardship to them or their child; and (8) entered into the marriage to the citizen or lawful permanent resident in good faith. *See* 8 C.F.R. § 204.2(c)(1)(i) (2025).

The self-petition process is designed to offer flexibility to applicants in proving their eligibility. Self-petitioners are encouraged to submit primary evidence to prove they meet the eligibility criteria, but any credible evidence submitted will be considered. *Id.* § 204.2(c)(2)(i). Each of the eligibility criteria has a corresponding list of evidentiary examples that may establish each of the criteria. *See id.* § 204.2(c)(2)(ii)–(vii).

For example, to establish the spousal relationship element, "[a] self-petition filed by a spouse must be accompanied by evidence of citizenship of the United States citizen or

3

proof of the immigration status of the lawful permanent resident abuser . . . [and] evidence of the relationship." *Id.* § 204.2(c)(2)(ii).  The third element, establishing residence, provides that "[o]ne or more documents may be submitted showing that the self-petitioner and the abuser have resided together in the United States[:] . . . [e]mployment records, utility receipts, school records, hospital or medical records, birth certificates of children born in the United States, deeds, mortgages, rental records, insurance policies, affidavits or any other type of relevant credible evidence of residency may be submitted." *Id.* § 204.2(c)(2)(iii).  And the fifth element, establishing abuse, may be satisfied by evidence such as "reports and affidavits from police, judges and other court officials, medical personnel, school officials, clergy, social workers, and other social service agency personnel." *Id.* § 204.2(c)(2)(iv).

VAWA self-petition applications are submitted on a standard form provided by the United States Citizenship and Immigration Services (USCIS) known as the Form I-360. Once a self-petitioner submits a Form I-360 and "other evidence supporting all of the elements required of a self-petitioner," a prima facie case is established. *Id.* § 204.2(c)(6).

## B.

Aborisade founded Phemnick Legal Center.[1]  His work primarily consisted of preparing and filing various immigration petitions for his clients.  Aborisade was not a licensed immigration attorney but served solely as a preparer of immigration applications,

---

[1] We view the facts in the light most favorable to the Government because Aborisade appeals the district court's denial of a motion for judgment of acquittal. *United States v. Briscoe*, 101 F.4th 282, 299 (4th Cir. 2024).

4

including VAWA self-petitions. A year after Aborisade began this work, the United States Department of Justice sent a cease-and-desist letter to Phemnick Legal Center due to suspicion the organization was engaged in the unlawful practice of immigration law.

An investigation of Aborisade's prepared applications ensued. The investigation revealed that many of the application sponsors' signatures were inconsistent and some signatures did not match the name of the listed sponsor. Aborisade submitted several VAWA self-petitions containing a psychological evaluation conducted by Dr. Alex Avila as evidence of the abuse suffered by each applicant. But Dr. Avila only evaluated four of Aborisade's clients. For the remaining applicants, Aborisade modified Word documents containing Dr. Avila's prior evaluations, adjusting them as needed to fit each new applicant.

Aborisade also forged residential lease documents for three applicants. He created a template lease agreement and repeatedly updated the document with each applicant's name and address to make it appear as though two people lived together in the residence.

Though Aborisade created these documents and assisted individuals in submitting their VAWA self-petition applications, he did not sign any of the applications as a "Preparer" and thus did not certify under penalty of perjury that he prepared the application. The "Preparer's Signature" block on each of the self-petition applications that Aborisade submitted reads "N/A."

C.

Aborisade was indicted on twenty-three counts: one count of conspiracy to commit visa fraud in violation of 18 U.S.C. § 371, § 1546(a) (Count 1); twelve counts of visa fraud

5

in violation of paragraph four of § 1546(a) (Counts 2-13); and ten counts of aggravated

identity theft in violation of 18 U.S.C. § 1028A (Counts 14-23).

Relevant to this appeal, the fourth paragraph of § 1546(a) penalizes

[w]hoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement.

18 U.S.C. § 1546(a).

At trial, the Government presented evidence establishing that Aborisade presented

false statements to USCIS in several visa applications.  At the close of the Government's

case-in-chief, Aborisade moved for a judgment of acquittal pursuant to Fed. R. Crim. P.

29(a), arguing that the Government failed to prove that the psychological evaluations and

lease documents were required by any immigration laws or regulations nor that he

submitted the self-petitions under oath.

The district court denied the motion, concluding that the documents were not per se

required but were among the pieces of credible evidence that an applicant may submit in

support of their application.  The district court also concluded that there was no explicit

oath requirement for one to be convicted of "knowingly present[ing] any such application,

affidavit, or other document" under paragraph four of § 1546(a).

After Aborisade's trial, the jury convicted him on all twenty-three counts as

charged, and the district court sentenced him to 57 months' imprisonment, followed by 2

6

years of supervised release. Aborisade did not renew his motion for judgment of acquittal at the close of his case-in-chief nor following his conviction.

Aborisade now appeals his convictions, arguing the district court erred in denying his motion for judgment of acquittal for Counts 4-13 (visa fraud) and Counts 16-23 (aggravated identity theft). Aborisade also appeals his sentence, asserting he is entitled to resentencing because of inconsistencies between the oral pronouncement and written judgment of his supervised release conditions.

We have jurisdiction pursuant to 18 U.S.C. § 1291.

II.

We start with Aborisade's appeal from the district court's denial of his motion for judgement of acquittal.[2]

Aborisade was convicted for "knowingly present[ing] any such application, affidavit, or other document [required by the immigration laws or regulations prescribed thereunder] which contains . . . [a] false statement." § 1546(a). He argues that his conviction should be vacated for two reasons. First, that the psychological evaluations and lease documents at issue are not "required" under § 1546(a) because VAWA's implementing regulations only state that self-petitioners *may* submit such documents as evidence of the eligibility criteria. Second, Aborisade argues that he did not present the

---

[2] The parties disagree about whether Aborisade forfeited his Rule 29 challenge and whether the government forfeited its forfeiture argument by failing to raise it in the district court. We assume without deciding that Aborisade's Rule 29 argument is preserved for our review, and we reject it on the merits.

7

fraudulent documents under oath and thus may not be convicted under § 1546(a). We address each argument in turn.

## A.

First, Aborisade argues that the psychological evaluations and lease documents at issue are not "other document[s] required by the immigration laws or regulations" under paragraph four of § 1546(a) because psychological evaluations and lease documents are not mandatory documents for VAWA self-petitions. He asserts that neither the implementing regulations nor the Form I-360 instructions indicate that psychological evaluations and lease documents *must* be submitted and thus these documents are optional, not required.

Indeed, neither the implementing regulations nor the form instructions specifically require psychological evaluations and lease documents. The evidentiary examples for the "residence" and "abuse" criteria in the regulations state that psychological evaluations and lease documents are the types of documents that *may* be submitted. 8 C.F.R. § 204.2(c)(2)(iii), (iv). The Form I-360 instructions "encourage[]" self-petitioners to provide documentation of "one or more documents showing that you and the abuser have resided together, such as employment records, utility receipts, school records, hospital or medical records, birth certificates of children, mortgages, rental records, insurance policies, or affidavits" and "[e]vidence of the abuse, such as reports and affidavits from police,

8

judges and other court officials, medical personnel, school officials, clergy, social workers, and other social service agency personnel." J.A. 1961–62.[3]

But the variety of evidentiary options offered to establish one's eligibility does not make the submission of evidence optional. Some evidence *must* be submitted to establish eligibility, and the fact that a petitioner may select the type of evidence to provide does not make that evidence optional. In other words, the evidence, in whatever form, is required to make a prima facie showing of eligibility under § 204(c)(6)(ii).

This rule is supported by the plain language of the statute and by two cases answering analogous questions under § 1546.

1.

We start with the plain text of the statute. *Van Buren v. United States*, 593 U.S. 374, 381 (2021). According to its dictionary definition, something is "required" when "stipulated as necessary to be done, made or provided." *Required*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/required (Nov. 21, 2025), [https://perma.cc/988X-WVWR]. Black's Law Dictionary's definition of requirement indicates something is required by law when it is "something that must be done because of a law or rule [or is] something legally imposed, called for, or demanded." *Requirement*, BLACK'S LAW DICTIONARY (12th ed. 2024). It also defines a requirement as "something that someone needs or asks for [;] . . . something . . . [an entity] sets as a necessary qualification; [or] the act of establishing something as a need or necessity." *Id.* In tandem

---

[3] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

with the definition, Black's Law Dictionary provides examples of requirements such as "fulfilling the requirements for college admission." *Id.*

The college admission example Black's Law Dictionary provides is telling. Universities often have varying requirements for students to gain admission to their schools. For example, a college may require a language course for admission and provide that it be any language the student chooses. However, once the student selects French as their language of choice, the French class becomes required for college admission. Once Aborisade chose to provide evidence of his clients' abuse and residence by psychological evaluations and lease documents, respectively, those documents became other documents required under immigration laws or regulations. Thus, the plain language of the statute clearly incorporates Aborisade's actions.

2.

In *United States v. Ryan-Webster*, 353 F.3d 353, 360–63 (4th Cir. 2003), the court interpreted the "other documents" clause in paragraph one of § 1546(a). Paragraph one penalizes "whoever knowingly forges, counterfeits, alters, or falsely makes any . . . other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States." 18 U.S.C. § 1546(a). The defendant in *Ryan-Webster* was convicted of conspiracy to commit visa fraud after using fraudulent immigration documents to support her clients in the employment-based immigration process. 353 F.3d at 355.

At the time, there were three steps an applicant would follow to obtain permanent legal resident status based on employment. *Id.* at 355–56. First, the applicant's employer

10

would file a certification application with the United States Department of Labor on their behalf so they could obtain a labor certification. *Id.* Then, the applicant's employer, or an attorney on their behalf, would file a Form I-140 (a visa petition) along with the labor certification with the-then Immigration and Naturalization Service[4] to obtain an immigrant visa number. *Id*. at 356. Finally, the applicant's visa number allowed them to apply for a change in immigrant status or for initial immigrant status. *Id.*

The defendant there argued her fraudulent submission of certification applications and visa petitions did not violate § 1546(a) because those documents were not "other document[s]" under the statute. *Ryan-Webster*, 353 F.3d at 360. Specifically, she argued that certification applications and visa petitions are not the document ultimately handed over for entry to the United States and thus cannot be read as "other document[s]" under paragraph 1 of § 1546(a). *Id*.

The court held that though the documents involved in steps one and two alone were insufficient to grant entry into the United States, they were prescribed by the immigration laws and regulations. *Ryan-Webster*, 353 F.3d at 361. The court reasoned that certification applications and visa petitions are both prescribed by the statute and regulations because, under 8 U.S.C. § 1281(a), one may not gain entry into the United States without "a valid unexpired immigrant visa" and one may not obtain an immigrant visa without a labor certification and an immigrant visa number. *Id*. at 360–61. Absent these documents, one

---

[4] Now known as United States Citizenship and Immigration Services (USCIS).

11

could not obtain an employment-based visa granting an applicant entry to the United States. *Id*.

Similarly, Aborisade submitted psychological evaluations and lease documents on behalf of his clients in support of their VAWA self-petition applications. Like the documents in *Ryan-Webster*, the psychological evaluations and lease documents here were alone insufficient to establish Aborisade's clients' eligibility for VAWA self-petition status. Regardless, these documents are prerequisites to establishing each client's eligibility for a VAWA self-petition because, without the documents, Aborisade's clients would not have established the criteria for the "residence" and "abuse" elements.

3.

In *United States v. Jimenez*, 972 F.3d 1183 (11th Cir. 2020), the Eleventh Circuit handled an analogous question. There, the court determined "a document demonstrating the qualified relationship for the EB-1C visa program" was an "other document required by the immigration laws or regulations" under § 1546(a). *United States v. Jimenez*, 972 F.3d 1183, 1192 (11th Cir. 2020). Relevant here, the defendant was convicted for conspiracy to commit visa fraud in relation to an immigration scheme where he paid United States businesses to create fictious joint ventures with Chinese businesses to ultimately sponsor EB-1C visas for Chinese individuals. *Id.* at 1185–86. The United States business would file an I-140 petition along with documents indicating the business relationship the Chinese individuals had, such as altered invoices, lease documents, photographs of offices, and evidence of wire transfers. *Id*. The defendant similarly raised a sufficiency of the

12

evidence challenge asserting the documents submitted were not required by paragraph four of § 1546 (a).

The Eleventh Circuit disagreed with the defendant, finding that the regulations governing EB-1C visas required that a petition for a "multinational executive or manager" "must be accompanied by a statement from an authorized official of the petitioning United States employer which demonstrates" a list of four criteria. *Id.* at 1192; *see* 8 C.F.R. § 204.5(j)(3)(i) (2024). EB-1C applications *require* that an individual submit some statement to establish appropriate criteria, but it does not indicate an exact document must be submitted. *Jimenez*, 972 F.3d at 1192. However, the document ultimately submitted demonstrating those criteria becomes the "other document required by the immigration laws and regulations." 18 U.S.C. § 1546(a).

Though *Jimenez* opines on a different immigration application process, its lessons apply. Aborisade prepared Form I-360s accompanied by the documents at issue on behalf of his clients. The psychological evaluations included with each application sought to offer evidence of the "abuse" element for eligibility and the lease documents offered evidence of the "residence" element. 8 C.F.R. §§ 204.2(c)(2)(iii), (iv). The regulations provide several options for one to comply with its evidentiary requirements and support one's eligibility without specifying a particular document that must be submitted. Still, the method an applicant selects to prove each of the eligibility criteria becomes a required "other document" under paragraph four of § 1546(a).

\* \* \*

13

Accordingly, we reject Aborisade's argument that the documents were not "required" under § 1546(a).[5]

### B.

Second, Aborisade argues his convictions should be vacated because he did not knowingly make or present any false statements under oath in violation of paragraph four of § 1546(a). The Government argues that § 1546(a)'s "knowingly presents" crime does not include an oath requirement.

Initially, the Immigration Act of 1924, 43 Stat. 153, only prohibited "knowingly mak[ing] under oath any false statement in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." 43 Stat. 153, 165. The Immigration and Nationality Act of 1952 later amended the law to also criminalize anyone who "knowingly presents any such application, affidavit, or other document containing any such false statement." 66 Stat. 163, 275–76. This court has yet to interpret whether the oath requirement applies to the "knowingly presents" crime. Other circuits are split on this question.

The Second Circuit, and the district court here, read the knowingly presents crime to stand alone, separate and apart from the oath requirement attached to the knowingly

---

[5] Our conclusion that psychological evaluations and lease documents are required documents is contained only to the fraudulent applications underlying Aborisade's convictions. Once applicants submit a self-petition, *whatever* evidence they ultimately choose to submit becomes required under § 1546(a). In refusing to hold otherwise, we decline to impose additional requirements that contravene the flexibility Congress intended when creating the VAWA self-petition process.

14

makes crime.  In *United States v. Khalje*, 658 F.2d 90 (2d Cir. 1981), the defendant appealed a conviction of visa fraud for presentment of a visa application containing false statements in violation of paragraph four of § 1546 (a).  He argued that the knowingly presents clause did not apply to his conduct because the statements he submitted were not sworn under oath.  *Id*. at 91–92.  The Second Circuit rejected this argument, finding the text of § 1546(a) to be clear.  *Id.* at 92.  It held the oath requirement only applied to the knowingly makes crime, reasoning that "knowing presentment assures that the presenter is liable only when he knows the statement is false."  *Id.*

Aborisade asks the court to apply the Third Circuit's holding in *United States v. Ashurov*, 726 F.3d 395 (3d Cir. 2013).

In *Ashurov*, the defendant entered the United States after obtaining an F-1 visa (commonly known as a student visa) which required that his school provide information about his educational program and certify under penalty of perjury that he would pursue a full course of study.  726 F.3d at 397.  Additionally, the student obtaining the visa had to certify that they would comply with the terms of admission, but that certification was not made under penalty of perjury.  *Id*.  The defendant continued to renew his visa year after year until USCIS discovered the school was not providing the required full course of study.  *Id.*

The defendant was charged under the knowingly makes clause.  *Id.*  However, once the Government discovered he never certified any document under oath, a superseding indictment was returned charging him with the knowingly presents crime.  *Id.*  After the jury convicted the defendant, the district court granted a judgment of acquittal concluding

15

that the Government had not proved the defendant knowingly presented a false statement made under oath. *Id.* The Government then sought to reinstate the defendant's initial conviction, arguing the district court incorrectly applied the oath requirement to the knowingly presents crime. *Id.* at 396.

The Third Circuit declined to follow *Khalje*, determining instead that § 1546(a) is textually ambiguous and concluding the oath requirement did apply to the knowingly presents crime. *Id.* at 402. Notably, the Third Circuit found the Government's prosecutorial tactics problematic, which informed its conclusion that the oath requirement similarly applied to the knowingly presents crime. *Ashurov*, 726 F.3d at 399. It also found that excising the oath requirement from the knowingly presents crime would allow the Government to avoid prosecuting under the oath requirement and thus render the requirement superfluous as the Government could always seek to bring charges under the knowingly presents clause. *Id.* The court's reasoning relied on its assumption that "the 'maker' of a statement in an immigration document is 'usually' also the person who presents it to the authorities . . . or at the very least is also the person who, like Ashurov, 'presents' it to a third party who then presents it to authorities." *Id*. It expressed concern with "treat[ing] the maker and the presenter the same when the statement is made under oath, but differently (and the presenter more harshly) when the maker does not swear an oath." *Id*. at 400.

Aborisade argues § 1546(a) is ambiguous at best and that *Ashurov*'s analysis is instructive here. However, the facts of *Ashurov* differ significantly from *Khalje* and this case. The idea of knowing presentment prevents the inequitable results that worried the

16

court in *Ashurov*. 726 F.3d at 400. The law generally does not punish those who make false statements when they have no legal obligation to tell the truth. *Id*. In many instances one might make a false statement but never intend to submit it to a government official or in an application process. *Id*. Section 1546(a) does not punish those who make unsworn statements without presenting them to the government, but it does punish those who present statements to the government, sworn or unsworn, knowing them to be false. Holding those who knowingly present false statements to the government criminally liable does not create an imbalance rendering § 1546(a)'s oath requirement superfluous.

We agree with the Second Circuit's reading of § 1546(a). The knowingly presents clause achieves Congress' intent to punish those who present false statements to the government, whether those statements are sworn or not. We therefore hold that the oath requirement does not apply to the knowingly presents crime. The record is clear. Aborisade knew the psychological evaluations and lease documents he presented were false. Aborisade's conduct is of the exact nature that Congress sought to punish in enacting § 1546(a). *Khalje*, 658 F.2d at 92 ("This construction carries out the apparent Congressional purpose of penalizing both those who swear to materially false statements in visa applications and those who present materially false statements in such applications, whether or not the latter swear to such statement.").

\*      \*      \*

The district court's denial of Aborisade's motion for judgment of acquittal is affirmed.

17

III.

We turn next to Aborisade's sentence. Aborisade argues that he is entitled to resentencing because of inconsistencies between the oral pronouncement and written judgment of his supervised release conditions.

A.

We review "the consistency of [the] oral sentence and the written judgment de novo, 'comparing the sentencing transcript with the written judgment to determine whether an error occurred as a matter of law.' " *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020) (citing *United States v. Johnson*, 765 F.3d 702, 710 (7th Cir. 2014)).

At the core of *Rogers* jurisprudence is a defendant's right to be present when sentenced. *Rogers*, 961 F.3d at 296; *see* FED. R. CRIM. P. 43(a)(3) ("[T]he defendant must be present at . . . sentencing."). A *Rogers* error arises where a district court fails to orally pronounce discretionary conditions of supervised release yet later such conditions appear in the written judgement. "Discretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities; the defendant has not been sentenced to those conditions, and a remand for resentencing is required." *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021) (alteration in original) (citing *Rogers*, 961 F.3d at 296). A discretionary condition constitutes a *Rogers* error only when a material discrepancy appears between the written judgment and oral pronouncement of that condition. *United States v. Turner*, 122 F.4th 511, 520 (4th Cir. 2024) (citing *United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024)).

18

The court has toiled back and forth to determine what constitutes a material discrepancy that warrants resentencing. Some inconsistencies do not warrant resentencing because the difference in the written judgment simply "clarifi[ed]" an "otherwise vague oral pronouncement." *Rogers*, 961 F.3d at 299 (internal citation omitted) (citing *Johnson*, 765 F.3d at 711). When the government offers an explanation for an alleged inconsistency, this court has held that such an explanation may be enough to render the inconsistency immaterial. *See United States v. Cisson*, 33 F.4th 185, 193–94 (4th Cir. 2022).

Nonetheless, it is settled in the Fourth Circuit that when a *Rogers* error occurs, whether due to a failure to pronounce a discretionary condition or due to a material inconsistency between the oral pronouncement and written judgment, we must vacate and remand for full resentencing. *United States v. Lassiter*, 96 F.4th 629, 640 (4th Cir. 2024) ("Our precedents are clear: When a *Rogers* error occurs, we must vacate the entire sentence and remand for full resentencing.").

B.

At Aborisade's sentencing hearing, the district court confirmed that he was familiar with the standard and mandatory conditions of supervised release as stated in the district court's standing order. The court then orally incorporated the conditions as listed in Standing Order 2020-13. The standing order states the defendant "must report to the probation office in the federal judicial district where you are *authorized to reside* within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame." Standing Order 2020-13, at 2 (emphasis added). Aborisade's written judgment as entered includes two

19

conflicting supervised release conditions.   The written judgment requires Aborisade "report to the probation office in the district to which the defendant is *released* within 72 hours of release from the custody of the Bureau of Prisons," while later listing the condition about the federal judicial district where the defendant is *authorized to reside* as written in the Standing Order.  J.A. 123 (emphasis added).

Aborisade argues he is entitled to a full resentencing because the inconsistency between the oral pronouncement and the written judgment is material and thus constitutes a *Rogers* error.  He asserts he may have objected at the sentencing hearing if he knew he would have to report to the district where he was released, rather than where he was authorized to reside.  The Government responds that these conditions only present a facial inconsistency because the district where an inmate is authorized to reside and the district where an inmate is released are the same.

Indeed, the challenged supervised released conditions present a clear facial inconsistency: a defendant being required to report to the probation office in the federal judicial district where they are *authorized to reside* compared to a defendant being required to report to the probation office in the federal judicial district where they are *released*.  But this facial inconsistency is not material.

Aborisade relies on an unpublished decision of this court, *United States v. Reyes*, No. 23-4598, 2024 WL 4381162 (4th Cir. Oct. 3, 2024), where the court vacated and remanded for full resentencing because of an identical alleged inconsistency between the oral pronouncement and written judgment.  In *Reyes*, the court acknowledged that the defendant "strongly contest[ed] the Government's proffered explanation" and thus could

20

"not disregard the differences between the oral and written descriptions of the probation district to which Reyes must report." 2024 WL 4381162, at *1. But the court in *Reyes* did not consider whether the inconsistency was material. *Reyes* instead cited to the holding in *United States v. Cisson*, 33 F.4th 185, 193–94 (4th Cir. 2022), which also dealt with identical inconsistent conditions. However, *Cisson* did not address any alleged inconsistency because there, the defendant "waived any possible response to the Government's proffered explanation." 33 F.4th at 194.

Here, like in *Reyes*, the Government has proffered an explanation for the inconsistency and Aborisade has strongly contested that explanation. While we also "may not disregard the differences between the oral and written descriptions of the probation district to which [Aborisade] must report," that cannot be the end of our *Rogers* error analysis. *Id.* We must still weigh those differences to determine whether the conditions are materially inconsistent. *Id*.

Aborisade's oral and written conditions are not materially inconsistent. In fact, they are consistent. Under current Federal Bureau of Prisons policy, inmates are ultimately *released* into the community where they are *authorized to reside*, making these conditions functionally the same. The Bureau of Prisons maintains a practice of releasing inmates to the district where they are authorized to reside. FED. BUREAU OF PRISONS, Unit Management Manual: Program Statement No. 5321.08 (Aug. 10, 2017) (emphasis added), [https://perma.cc/B3T7-UAXA]. Prior to release, inmates work with United States Probation and Pretrial Services to verify their residence and employment for release to facilitate their reentry into the community. *Id*. at 6, 10. If the inmate does not have an

adequate place of residence, probation officers work to place them in a residential reentry center. *Id*. at 11.

The Administrative Office of the United States Courts further indicates the district where one is released is the district where they reside.

> Under 18 U.S.C. § 3624(c)(1)-(2), the Bureau of Prisons shall, to the extent practicable, ensure that an inmate spends a portion of the final months of the term of imprisonment under conditions (including in home confinement or at a residential reentry center) that will afford the inmate a reasonable opportunity to adjust to and prepare for reentry into the community.

ADMIN. OFF. OF U.S. COURTS, Overview of Probation & Supervised Release Conditions, at 15 n.14 (July 2024), [https://perma.cc/3BQM-KLWX].  Thus, the Bureau of Prisons facilitates inmates' reentry as they approach release in a manner dependent on their release into a community where they prove residence or a residential reentry center where they will begin residence.

Though there are other reasonable interpretations of *released* compared with *authorized to reside*, current Bureau of Prisons policy provides that the district in which a defendant is released is the same district in which a defendant is authorized to reside.  As "'the district to which a defendant is released' does not 'outline an additional obligation' beyond the condition agreed to, it does not 'impose a new condition' and is not *Rogers* error." *United States v. Thompson*, No. 23-4638, 2025 WL 2427192, at *5 (4th Cir. Aug. 22, 2025) (cleaned up).

We acknowledge and reaffirm that district courts must orally pronounce the conditions to which a defendant is sentenced, and the written judgment should reflect such conditions.  At the same time, when a facial, immaterial inconsistency arises in the written

22

judgment, the defendant is not entitled to resentencing because a *Rogers* error has not occurred. We hold that, here, the contested inconsistency between the oral pronouncement and written judgment is not material and thus full resentencing is not warranted.

IV.

For the foregoing reasons, we affirm the district court's judgment and Aborisade's sentence in all respects.

*AFFIRMED*

TOBY HEYTENS, Circuit Judge, dissenting:

I would vacate Aborisade's convictions on Counts 4–13 and 16–23 and remand for resentencing on those that remain. I would hold the documents that formed the basis for Count 4–13 were not "required" under the fourth paragraph of 18 U.S.C. § 1546(a). And because Counts 4–13 provided the predicates for Counts 16–23, I would vacate Aborisade's convictions on those counts as well.[1]

Section 1546(a)'s fourth paragraph makes it a felony to knowingly make or endorse materially false statements "in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder" or to "knowingly present[] any such application, affidavit, or other document." 18 U.S.C. § 1546(a) ¶ 4. The documents underpinning the relevant counts here were lease agreements, character letters, and psychological evaluations submitted to support self-petitions under the Violence Against Women Act (VAWA). Everyone agrees none of those documents were "application[s]" or "affidavit[s]" under Section 1546(a). The question is whether they were "other document[s] required by the immigration laws or regulations prescribed thereunder."

The government makes no argument that any "immigration laws" are relevant here, and the only regulation it identifies as the source of the underlying obligation to submit

---

[1] The government asserts Aborisade failed to preserve this argument because he should have raised it via a pretrial motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). Maybe so. But forfeiture works both ways, see *United States v. Newby*, 91 F.4th 196, 200 n.* (4th Cir. 2024), and here the government never asked the district court to reject Aborisade's argument on the grounds that it was "untimely" under Rule 12(c)(3). For that reason, the government's newly minted waiver and forfeiture arguments are themselves forfeited. See *Newby*, 91 F.4th at 200 n.*.

documents is 8 C.F.R. § 204.2(c). The issue before us thus reduces to a single question: Were the "document[s]" that formed the basis for Counts 4–13 "*required* by" that regulation? 18 U.S.C. § 1546(a) (emphasis added). In my view, the answer is no.

Section 204.2(c)(2)'s text makes clear—over and over again—that it does not require a VAWA self-petitioner to submit any one document or type of document. The first subsection states that although self-petitioners "are *encouraged* to submit primary evidence whenever possible," the agency "will consider . . . any credible evidence relevant to the petition." 8 C.F.R. § 204.2(c)(2)(i) (emphasis added). The remaining six subsections address various substantive requirements a self-petitioner must establish to obtain relief and what underlying facts a self-petitioner must prove to satisfy those requirements. See, *e.g.*, § 204.2(c)(2)(ii) ("A self-petition filed by a spouse must be accompanied by evidence of citizenship of the United States citizen or proof of the immigration status of the lawful permanent resident abuser. It must also be accompanied by evidence of the relationship."). But none of Section 204.2(c)(2)'s provisions say a self-petitioner must submit a particular type of "document"—the term used in 18 U.S.C. § 1546(a). Instead, Section 204.2(c)(2) is littered with lists of documents a self-petitioner "may" or "should" submit (subsections (ii), (iii), (iv), (v), (vi), and (vii)), statements that certain types of documents will be considered "[p]rimary evidence" (subsections (ii) and (v)), and reassurances that the agency will consider all "forms of credible relevant evidence," § 204.2(c)(2)(iv); accord § 204.2(c)(2)(iii), (v)–(vii) (similar).

In contrast, other provisions of the broader set of regulations expressly require the submission of specific documents. For example, "[a] petition submitted on behalf of a

25

spouse *must* be accompanied by a recent ADIT-style photograph of the petitioner, a recent ADIT-style photograph of the beneficiary, a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the petitioner and the beneficiary." 8 C.F.R. § 204.2(a)(2) (emphasis added); accord, *e.g.*, § 204.2(d)(2)(i) (stating that "[i]f a petition is submitted" by a mother on behalf of a child, "the birth certificate of the child showing the mother's name *must* accompany the petition" (emphasis added)). Other regulations state that failure to submit an otherwise-mandatory document may be excused under certain circumstances. See, *e.g.*, § 204.2(a)(2) ("However, non-ADIT style photographs may be accepted by the district director when the petitioner or beneficiary reside(s) in a country where such photographs are unavailable or cost prohibitive."). These provisions confirm the regulations' drafters knew how to require the submission of particular documents and thus support the inference that the omission of any such requirement in the subsection at issue here was a deliberate choice. Cf. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration removed)).

Statutory history and context support the same conclusion. Marriage to a U.S. citizen or lawful permanent resident has long been a basis for permitting a noncitizen to reside permanently in the United States. See, *e.g.*, 8 C.F.R. § 204.2(a)(1). This system, however, sometimes enabled abusers to "control" a noncitizen spouse "by placing full and complete control of" that person's "ability to gain permanent legal status in the hands of the

26

citizen or lawful permanent resident spouse." H.R. Rep. No. 103-395, at 26 (1993); see *id.* at 37. In VAWA, Congress changed the system to allow an abused noncitizen spouse to file a petition on their own behalf. See Violence Against Women Act of 1994, Pub. L. No. 103-322, § 40701, 108 Stat. 1796, 1953–55 (1994). And, when it did so, Congress directed "the Attorney General [to] consider any credible evidence relevant to" such self-petitions without *requiring* any particular types of documentation. 8 U.S.C. § 1154(a)(1)(J).

The government's trial evidence reflected the same understanding. A senior immigration services officer agreed that VAWA self-petitioners face "no specific per se document requirement" and may "establish their eligibility [for relief] using any credible evidence." JA 1676 (first quote); JA 1644 (second quote); accord JA 1700 ("Q. Are there any specific document requirements? A. No."). As a different officer explained, "[w]e don't want to hold people—that have been abused, we don't want to impose on them the need to contact their abuser. So, typically, we would take *any credible evidence*." JA 420 (emphasis added). This testimony is bolstered by the agency's own forms, which—consistent with the regulations—state that VAWA self-petitioners "are encouraged to provide" certain types of documents but do not mandate that any one document (or set of documents) be provided. JA 1961.

The government offers two basic responses. I do not find either persuasive.

First, the government asserts that, "as a matter of ordinary English," any "documents used to satisfy a self-petition's evidentiary requirements under 8 C.F.R. § 204.2(c)(2) are documents 'required by' that regulation." U.S. Br. 23. I disagree. Whether someone is required to prove a particular fact is different from whether that person is required to prove

27

that fact in a particular way. Take a person's age, for example. One obvious way to prove it is through documents like a birth certificate, a driver's license, or a passport. But there are other ways too, some of which do not involve documents at all. For example, in-court testimony from their parent or the doctor who delivered them. Cf. 8 C.F.R. § 204.2(c)(2)(vii) (stating that "[e]vidence of good faith at the time of marriage may include . . . testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences"). Or an "affidavit" from one of those same people—a term this statute makes clear is distinct from the sort of "other document[s]" at issue here. 18 U.S.C. § 1546(a) ¶ 4. Just because a person was required to prove their age does not mean that the particular form of proof they offered was itself *required*.

This distinction—between the burden to prove a particular condition is satisfied and a requirement to do so in a particular way—explains the flaw in the government's hypothetical about a college that requires all applicants to have taken at least two years of a non-English language. The government focuses on the underlying facts that would satisfy the condition, insisting that a student who took two years of high school Spanish was required to do so to gain admission. But the analogy is incomplete because it says nothing about the evidence the college is willing to accept to prove that the applicant actually took two years of Spanish. Depending on the school, the student may be permitted to check a box on the application website, submit a letter from their Spanish teacher, or conduct part of their college interview in Spanish to demonstrate proficiency. And here, the relevant instructions say the agency will consider "any credible evidence" (8 C.F.R.

28

§ 204.2(c)(2)(i)), as opposed to a college mandating (to complete the analogy) submission of a certified transcript.[2]

Second, the government asserts that this Court's construction of a similar provision in the same statutory section in *United States v. Ryan-Webster*, 353 F.3d 353 (4th Cir. 2003), supports its reading of this statute. Once again, I disagree. On the contrary, I think *Ryan-Webster* hurts the government more than it helps it.

*Ryan-Webster* involved statutory language making it unlawful to use or possess any "visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States" while knowing it was forged, counterfeited, or falsely made. *Ryan-Webster*, 353 F.3d at 357 (quoting 18 U.S.C. § 1546(a) ¶ 1). The question in *Ryan-Webster* was whether "a Form I-140, Visa Petition for Prospective Immigrant Employee" was a document required for entry within the meaning of that provision. *Id.* at 356; see *id.* at 359–61. This Court answered yes, reasoning that the defendant could not have lawfully entered the United States without filing such a petition. See *id.* at 361.

The statutory scheme we confront here is different. The government asserts that "[j]ust as the INS in *Ryan-Webster* could not classify [a noncitizen] without a Visa

---

[2] The government also asserts that "just because there is a menu of options for satisfying a requirement does not mean that the option chosen was not 'required.'" U.S. Br. 24. Fair enough, but here there is no menu. Some government forms—think USCIS Form I-9, which is required to start almost any new job—identify a closed list of acceptable documents and allow regulated parties to choose among them. But as explained in the text, the regulation at issue does not require anyone to submit a particular type of document— or any "other document" at all to meet the underlying evidentiary burden.

Petition," Aborisade's clients "could not self-petition for classification without documents proving that they were eligible for that benefit." U.S. Br. 27. But, once again, the language of the provisions governing VAWA self-petitions do not support the second part of that sentence, and the government's contrary arguments "sound more of *ipse dixit* than reasoned explanation." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 543 (1985). Unlike in *Ryan-Webster*, the lease agreements, character letters, and psychological evaluations at issue in Aborisade's case were not "prerequisites" for filing an otherwise-valid VAWA self-petition. *Ryan-Webster*, 353 F.3d at 361. Indeed, they were not requisite at all.

*          *          *

Despite acknowledging "there is no document per se that is required" under the current regulations, the district court worried it would be "an absurd result" to say Aborisade's underlying conduct here was not criminal. JA 1725–26. "But no amount of policy-talk can overcome plain statutory text," *Julmice v. Garland*, 29 F.4th 206, 210 (4th Cir. 2022) (alterations and quotation marks removed), and the language on which this appeal turns is contained in a regulation, not a statute. It is the Executive Branch that wrote the language of 8 C.F.R. § 204.2(c)(2), and it is the Executive Branch that seeks to imprison Aborisade based on what it claims that regulation means. Because I do not believe that the conduct charged here involves "any . . . other document required by the immigration laws or" the current "regulations prescribed thereunder," 18 U.S.C. § 1546(a) ¶ 4, I would vacate Counts 4–13 and 16–23 and remand for resentencing on the remaining counts

30

without addressing whether Aborisade's conduct may have violated any *other* statutory or regulatory provisions.